## Sharps v. Revenue Commissioner

464

*Wolf, Block, Schorr & Solis-Cohen*, for appellants.

*David Berger*, City Solicitor, and *Lawrence Prattis, Leonard B. Rosenthal, Helen S. Chait*, Assistant City Solicitors, for appellees.

MACNEILLE, P. J., July 10, 1956.—We have before us for consideration an appeal from the decision of the Tax Review Board of the City of Philadelphia, wherein the board upheld the revenue commissioner's tax assessment against appellants for the sum of $2,472.12 as part of their net profits tax due for the year 1954. The tax was assessed on the gain realized by appellants from the sale of a property located at 1321 Arch Street in Philadelphia, which they held as tenants in common. The tax review board took testimony and concluded that the gain on the sale represented "earned income" within the meaning of the ordinance, that "the facts of the present case support the conclusion that petitioners' [appellants'] gain from the sale of real property was not income derived from the passive ownership of property but income earned from their business activity".

The following facts appear in the record. In October 1944, appellants purchased the subject office building, then known as the "Keystone State Building". The

purchase was induced by the efforts of Albert J. Grosser, a real estate broker, who impressed upon appellants the desirability of the investment. Appellants took title as tenants in common and by an agreement dated October 10, 1944, they memorialized the facts and agreements, inter alia, that equal capital contributions had been made, that profits and losses were to be shared equally and that they would appoint a rental agent for collection of the rents and management of the property.

During the ensuing 10 years, the Albert J. Grosser Company operated the multi-story structure, which at the time of sale had 35 tenants. The tenants received elevator service, janitor service, heat, light, water and, for an extra charge, air conditioning. A regular maintenance crew employed generally by the Grosser Company was responsible for maintaining the proper functioning of the building's facilities. The building is "a typical office building" with all of the services normally furnished to such tenants. The Grosser Company executed leases with the tenants, paid all the bills, governed employment of personnel, contracted for repairs and in every way assumed responsibility, without consulting the owners, for operation and management of the building.

Appellants' testimony stressed the fact that Albert J. Grosser Company completely operated and managed the building. The individual owners exercised little or no control over the management of the building but were content to receive their respective monthly shares of the net profits. There is no doubt that the management agent was fully subject to the control and direction of the owners, that he was their agent, removable by them at will, and subject to any determination they might make as to policy. Appellants have placed great stress upon the contention that appellants were really only passive investors in the abili-

ties of Mr. Grosser, that he did everything and they simply owned a share in him. Such contention we think is without merit. Tax liability cannot be avoided by the use of an agent, and Mr. Grosser's operations and activities on appellants' behalf are determinative of the nature of appellants' activities.

We do not consider it necessary to review the other interests of the three appellants; it may be assumed that none of them was engaged at any time in the general real estate business, but that each had other major business interests.

From 1944 through 1954 the rental income from the operation of the subject building was reported as taxable income on the City of Philadelphia net profits tax returns. In 1954, petitioners sold the building for $300,000, realizing a gain of approximately $200,000 over and above the purchase price. Appellants reported the sale but stated on their net profits tax return that "the disposition of the property results in the complete termination of the joint venture and is not a business activity within the meaning of the ordinance". No tax was paid on the sale and thereafter the revenue commissioner levied an additional assessment reflecting imposition of tax upon the realized gain.

After the initial argument of this case we directed a reargument in an effort to resolve more clearly the issues involved and to bring out more definitely the respective contentions of the parties. As we now view the controversy, we must seek to answer three major questions. First: Is the owner of real estate who, under the circumstances of this case, entrusts its operation to an agent who furnishes service to the tenants, collects the rents, pays the expenses of operation and turns the net profits over to the owner, engaged in a taxable activity? Our consideration of the record and the argument and briefs leads us to answer this question in the affirmative.

Second: May the city impose a net profits tax on gain realized from the sale of real estate which is used in the conduct of a taxable activity? We believe that it may, but only to the extent that the gain realized from the sale results from the taxable activity, and not to the extent that the gain results from economic factors, unearned increment or other conditions unrelated to the taxable activity.

Third: Has this court power to entertain an appeal from the findings of fact of the tax review board? We have concluded that it has, but because the record is devoid of evidence to support a finding in accordance with our answer to the second question just posed, we are obliged to remand the case to the tax review board for further consideration.

There is no authority or basis in the municipal tax system for drawing a distinction between earned income and "capital gains", and the use of the term "capital gain" can only serve to becloud the issue. The only question for consideration when the city seeks to impose its tax is whether the "gain" is *earned* income within the taxing scope of the Ordinance of 1939. The fact that "capital gains" receive a special treatment within the Federal income tax structure is of no import whatsoever in the consideration of this question and whether there should be such special treatment is a matter for legislative consideration only.

To the extent that appellants apparently contend that a gain on the sale of real estate is not taxable unless they are engaged in a business designed to realize such gain, we cannot agree. The question is whether or not their business activities provoked any part of the gain. Four cases govern the disposition of the question of the scope of the city's taxing authority: Pennsylvania Co., etc., v. Philadelphia, 346 Pa. 406 (1943); Breitinger v. Philadelphia, 363 Pa. 512

(1950) ; Murray v. Philadelphia, 363 Pa. 524 (1950) ; Murray v. Philadelphia, 364 Pa. 157 (1950).

In the Pennsylvania Company case, the earliest of these cases, the Pennsylvania Company, as trustees, operated or managed certain properties as either owner or mortgagee in possession. The buildings were a four-story apartment building, a five-story office building, a six-story loft building devoted to manufacturing and storage, a two-story apartment house with an apartment on each floor, a three-story store-and-apartment building and a two-story store-and-office building. Mr. Justice Allen M. Stearne stated in the opinion of the court, at page 412:

"In each of these illustrations, in varying degrees, the Plaintiff furnished services consisting of labor, heat, light, power or supervision. In no case did the duties of the trustee consist solely of collecting rent and transmitting same to the beneficiaries." The Supreme Court ruled that the income from these properties was taxable under the Ordinance of 1939, imposing the tax upon "net profits earned after January 1, 1939, of businesses, professions or other activities conducted by . . . residents".

The fact that the trust company was not engaged in the general real estate business or principally in such business was properly regarded as immaterial. The question for resolution was whether the income was *"earned income"* and it was indicated that income derived from the passive ownership of property was not taxable; the test of the earned or unearned character of the income was regarded as being whether some labor, management or supervision was involved in or necessary to the production of the income.

The Breitinger case and first Murray case followed in 1950. In the Breitinger case it was held that the tax could not be imposed on the taxpayer's income from securities, mortgages and certain investment

real estate. The Supreme Court did not reject either the reasoning or the result of the Pennsylvania Company case. It held that the matter was governed by the fact that the taxpayer was not engaged in a taxable activity, that he had not significantly rendered such labor or services as to justify the conclusion that the income was earned rather than. the product of passive investment. Mr. Justice Linn pointedly stated on behalf of the court, page 521:

"The ordinance makes a distinction between net profits earned, as taxable income, and net profits not taxable because not gain resulting from professional or business activity as defined in the ordinance. The use of the words 'operation' and 'net gain' seem clearly to refer to a taxable's active conduct of a money-making occupation and not to the kind of acts done by one not engaged in business but merely conserving his property."

The first Murray case also held that, as a matter of fact, the taxpayer was not engaged in taxable activities, that his income was unearned. Mr. Justice Linn stated on behalf of the court, at page 527: ". . . All that plaintiffs did with respect to the leased real estate was to collect the rents, pay the taxes, and maintain fire insurance thereon . . .". The Pennsylvania Company case was referred to with approval.

In the second Murray case, it was held that city council lacked the power to tax investment or unearned income, whether received in the form of dividends, interest or rentals, that such taxation was barred by the limitations of the Sterling Act of August 5, 1932, Special Session, P. L. 45, sec. 1, 53 PS §4613, and the uniformity requirement of article IX, sec. 1, of the State Constitution. City council, by an amendatory Ordinance of December 9, 1949, had endeavored to extend the city net profits tax to "net income . . . from any source whatsoever", and such amendment was

deemed invalid. The scope and meaning of the Pennsylvania Company case was carefully preserved. The test of taxability continued to be a factual one of whether the income was earned or unearned, whether the income was produced by the labor, services or taxable activity of the taxpayer or whether it essentially resulted from the passive ownership of property. The second Murray case and its language must be sharply limited as to the municipal endeavor to tax unearned income.

We do not deem it possible or practical to establish any readily applicable standard of what distinguishes earned from unearned income. The Supreme Court in the four cited cases has already spelled out a sufficient guide. The test concerns a review of the quantum of business or commercial activity required or expended in the production of the income. There is a negative indication that activities designed to conserve the property do not render the income taxable. It must be borne in mind that the phrase "earned income" is not to be restricted to either a major or minor occupational sense; it is not dependent on any concept of time or proportionate devotion of time or effort.[1] The phrase is descriptively keyed to the *nature* of the activity, maximal or minimal. If the income is in genuine, realistic and practical sense "earned" it is taxable; concomitantly and obversely, if the income is in genuine, realistic and practical sense essentially a return on investments, it is nontaxable regardless of the scope of the supervising effort. The difficult cases arise when the income is in the "gray" zone of both "invest-

---

[1] In the Pennsylvania Company case Mr. Justice Stearne stated, page 411: "The fact that Plaintiff is not engaged primarily in the real estate business and that the trusts which it administers were not created for the purpose of engaging in the real estate business or the hotel business does not detract from the manifest character of Plaintiff's activities".

ment return" and "earned" because of the required effort to make the investment operative or profitable. Cases in such gray zone may be deemed either taxable or nontaxable, and it is here that there is required the fact-finding function with its emphasis on permissible inferences.

The principles enunciated above regarding rental or other forms of income apply alike to the sale of assets at a gain. The product of an earning activity may be reflected by a rise in value of capital assets used by the taxpayer in such activity. Upon the sale of such assets, the earned part of the profit is earned income within the tax reach of the ordinance. The fact that the gain is realized from the sale of property does not make it any less an earned gain; the test is whether the gain is earned through the taxpayer's conduct of business or taxable activity. The case of Vollet v. Pechenik, 380 Pa. 342 (1955), dealt with a question of construction of a partnership agreement and it was there held that a capital gain realized from the sale of partnership assets, upon liquidation of the partnership, was not distributable as partnership income. That case is not pertinent to our present considerations.

The city and the board both made reference to section 220 of the Income Tax Regulations of December 13, 1939, p. 656, defining "Activities Subject to Tax on Net Profits". Paragraph (2) (a) (2) provides as follows:

"*Income from Sale of Real Estate.* Any gain realized from the *sale* of *real estate* shall be deemed taxable income, if the property sold was productive of rental income subject to tax. The full amount of such gain shall be reported without regard to the length of time of ownership thereof by the vendor."

From what we have heretofore stated, it should be clear that we would not dispose of this case on this regulation. We are of the opinion that the gain can be

taxed only to the extent that it is an earned net profit from the conduct of business or other activity within the meaning of the governing Ordinance of 1939. The revenue commissioner is without power to expand the scope of the tax or to set up any conclusive presumptions of taxability. Section 6(*a*) of the ordinance empowers him only to issue regulations with regard to *administration* and *enforcement* of the provisions of the ordinance. See Pennsylvania Co., etc., v. Philadelphia, 346 Pa. 406, 410 (1943).

Whether a gain from sale of real estate is earned by the taxpayer is a factual question which cannot be foreclosed by the nature of the income received from the property; the gain may be unrelated to the income-producing character of the property and the activities which govern the taxable character of the income. The time of acquisition of ownership would also be an important factor, for any effort by the city to tax a gain accrued in whole or in part prior to the adoption of the Ordinance of 1939 would be unconstitutional. City council, aware of the limitations in imposing a retrospective tax, clearly imposed the tax *only* on profits earned after January 31, 1939. The sweeping breadth of section 220 makes it invalid. It is our view that in every case where a gain from the sale of real estate is claimed to be taxable, the taxable amount must depend on these factors of time of ownership and relation of activity to the gain realized. Such determinations may at times present a problem, but the fact that, in particular circumstances, the calculation of the tax may be difficult does not authorize a broader imposition of tax. Whether the commissioner could or could not, by the promulgation of regulations, establish a rebuttable presumption of taxability or establish a burden of proof, is not now a question for our consideration.

Any reliance by the board on section 220 of the regulation, we have concluded, was error.

Appellants have not disputed the taxability of the income which they derived from the operation of the building. However, the nature of the income received did not necessarily govern the nature of the gain realized by sale of the building. Appellants, contrary to the city's contention, assert that the gain was not earned or derived as a result of their business activities, that is, the operation of the building. It would seem that only expert opinion could serve to clarify the cause of such gain. Without such testimony we and the board are alike in the dark. Neither party presented such testimony or touched upon the nature of the gain, but the tax review board nevertheless concluded that the gain was earned as a result of appellant's business activities. The scope of our review then became pertinent.

Section 10 of the Ordinance of September 9, 1953, relating to the tax review board, pertinently provided with regard to appeals as follows:

"*Appeals From Tax Review Board.* Findings of fact and decisions of the Tax Review Board on compromises shall be final and conclusive and may not be the subject of further review by any court. Any other decision by the Tax Review Board may be appealed to any court of competent jurisdiction on jurisdictional, procedural or legal grounds within (30) days after the mailing of notice of such decision or action to the petitioner or his attorney by the Tax Review Board,": 1953 Ordinances, p. 478.

Effective February 29, 1956, city council adopted the Code of General Ordinances of the City of Philadelphia. Section 19-1706 of the code was designed to replace section 10 of the 1953 Ordinance and provides as follows:

"(1) Decisions of the Tax Review Board pertaining to compromises and waiver of interest or penalty shall be final and conclusive and shall not be the subject of further review by any court.

"(2) Other decisions of the Tax Review Board may be appealed to any court of competent jurisdiction within 30 days after the mailing of notice of such decision or action to the petitioner or his attorney by the Tax Review Board."

The city solicitor's office claims that there was inadvertently omitted from section 19-1706 a provision that findings of fact of the tax review board are to be conclusive.[2] An amendatory ordinance is said to be presently pending before council. Whether this is so or not we regard as immaterial. There is always a right of appeal to the courts on jurisdictional, procedural or legal grounds, and while findings of fact by an administrative body are in many instances regarded as conclusive when supported by evidence, the question whether there is or is not evidence to warrant a finding is one of law and is reviewable on appeal.

We are of the opinion that the question of the scope of judicial review of the board's findings and decisions is one of major significance. There is a marked tendency in present-day municipal planning to increase the effective finality of administrative decisions, to bar the operation of judicial review even when the municipality is a party litigant. Such finality is here urged for the functions of the tax review board.

We feel obliged to follow the rule of most stringent construction against such finality. Finality in cases

---

[2] The ordinance of September 9, 1953, was repealed by section 1-107 of the Code of General Ordinances which became effective February 29, 1956.

of compromise is without prejudice to the taxpayer since it operates in the nature of municipal grace. However, in other cases which come before the board there is sharp conflict between the taxpayer and the city and they are adverse parties. The tax review board is created by section 3-100 (*f*) of the Philadelphia Home Rule Charter; it is considered a part of the city's department of collections. To provide for final and unappealable decision of litigation by one of the adverse parties is offensive to the most essential elements of democratic process. Such power should be carefully scrutinized before it is delegated or claimed, and it should certainly not be posited on the worth of present particular members of an administrative board, for membership and, indeed, administrations change. The dubious character of this claimed freedom from judicial review is highlighted by noting that the city solicitor represents the city in this proceeding. The Law Department is also by section 19-1701(1) (*c*) of the Code of General Ordinances "the legal adviser of the Tax Review Board".

In view of our conclusion that the parties have not satisfactorily joined factual issue we have considered what authority, if any, there is in this court to remand the record to the tax review board. Pa. R. C. P. 1\* (*a*) provides that the practice and procedure in appeals from administrative agencies of the City of Philadelphia and other like bodies shall be taken and prosecuted in the same manner as provided by Pa. R. C. P. 1 to 13. Pa. R. C. P. 8 provides, in pertinent part, that: "The court may in any case remand the record to the agency for further proceedings if it deems the same necessary." We are of the opinion that to this extent the incorporation of Pa. R. C. P. 8 with Pa. R. C. P. 1\* (*a*) is a valid exercise of judicial control over the procedure in local administrative appeals and conclude that we have authority to remand

the record to the tax review board for further consideration and disposition. We are further of the opinion that we may retain jurisdiction in this matter pending its final disposition (cf. Pa. R. C. P. *26(c)) and shall direct that any further appeal, after remand, shall be considered by this court.

### Order

And now, July 10, 1956, it is ordered and directed that the record in the within matter be remanded to the tax review board for further consideration and disposition in accordance with this opinion. In the event of any further appeal to the court of common pleas the prothonotary shall assign same to this court in accordance with the practice and procedure followed in appeals from decisions of the workmen's compensation board.