Philadelphia, Appellant, *v.* Price.

Argued October 7, 1965. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Matthew W. Bullock, Jr.,* Deputy City Solicitor, with him *Yale B. Bernstein,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellant.

*Gordon W. Gerber,* with him *Dechert, Price & Rhoads,* for appellee.

*Otis W. Erisman,* with him *Truscott, Kline & Erisman,* for appellee.

*John J. Lombard, Jr.,* with him *Obermayer, Rebmann, Maxwell & Hippel,* for appellee.

OPINION BY MR. JUSTICE JONES, January 4, 1966:

This is an appeal from a decree entered by Judge SPAETH of the Court of Common Pleas No. 8 of Philadelphia County, a motion of the City of Philadelphia (City) to take off the nonsuit having been denied.

On May 15, 1964, Lawrence Moy, a person of Chinese descent, filed a complaint with the Philadelphia Commission on Human Relations (the Commission), charging that Eli Kirk Price, III and Howard Hanson, Jr., Price's real estate agent, had refused on racial grounds to sell him and his wife, Irene Moy, Price's property located at 117 Bethlehem Pike, Philadelphia, in violation of the Fair Practices Ordinance, §9-1104 (A) (1) of the Philadelphia Code. The alleged discrimination against Moy took place on May 11, 1964, the very same day that Price entered into an agreement to sell his property to Hanson. On June 15, 1964, Hanson, in turn, agreed in writing to sell the premises to Charles J. Ansel and his wife, Helen M. Ansel.

After an investigation and full hearing, the Commission issued an order on August 7, 1964, finding that both Price and Hanson had illegally discriminated against the Moys by reason of their Oriental descent

566

and directing Price and Hanson to enter into an agreement of sale with the Moys for 117 Bethlehem Pike within three days. On August 10, 1964, Price informed the Commission that he refused to comply with the order, citing as one of his reasons the institution of a legal action on the same day—August 10, 1964—by the Ansels for specific performance of the Price-Hanson and Hanson-Ansel sales agreements.

As required by §9-1108 of the Philadelphia Code, the City brought a suit in equity to enforce the Commission's order against Price, Hanson, and the Ansels. On April 13, 1965, Judge SPAETH, of the Court of Common Pleas No. 8 of Philadelphia County, dismissed the City's petition and rule to show cause why the order of the Commission should not be reviewed by the chancellor as on narrow certiorari, sustained the defendants' objections to the admission into evidence of the record of the Commission and set the cause down for trial de novo.

At the trial, the City introduced no substantive evidence apart from offering the record of the Commission's proceedings. Defendants' motion for nonsuit was, therefore, granted and plaintiff's subsequent motion to take off the nonsuit was denied. The City then appealed to this Court.

The City's arguments can be broken down into two main contentions, *both procedural in nature*: (1) that the failure of defendants to appeal from the order of the Commission prevents them from attacking collaterally that order in an enforcement proceeding and (2) that the Fair Practices Ordinance, §9-1101 et seq., of the Philadelphia Code (Ordinance) does not provide for a trial de novo in an enforcement proceeding.

The validity of the City's first contention must be tested by whether or not the respondents to a Commission order have the right of an appeal separate and apart from the enforcement proceeding in a court of

equity. An examination of the Ordinance reveals that §9-1107(3) *specifically* states that there shall be no appeal from a prehearing dismissal of the complaint. Section 9-1108 provides: "In the event the Respondent refuses or fails to comply with any order of the Commission or violates any of the provisions of this Chapter, the Commission shall certify the case and the entire record of its proceeding to the Law Department, which shall invoke the aid of an appropriate Court to secure enforcement or compliance with the order or impose the penalties set forth in Section 9-1109, or both." The sections mentioned above suggest that the right to review a Commission order is covered by the Ordinance itself, that is, the respondent may contest an order only, after a full hearing, by refusing to comply with the order and requiring the City to take the matter to an appropriate Court to seek enforcement of the order.

Conversely, there exists no direct right of appeal of the Commission's order. Orders of the Commission may not be appealed directly to the Dauphin County Court under the Administrative Agency Law (Act of June 4, 1945, P. L. 1388, §41, 71 P.S. §1710.41), because that law only gives the right of appeal from *State* agencies (71 P.S. §1710.2(b)) and the Commission is not a *state* agency.

The City contends, however, that Rule 1*(a) of the Courts of Common Pleas of Philadelphia County[1] gives the right to defendants to appeal from an order of the Commission—an admittedly local agency—to the com-

---

[1] Rule 1*(a) "Unless otherwise provided by law, by these rules or by special order of the court, the practice and procedure in appeals from administrative agencies of the City of Philadelphia and other like bodies, from which appeals are allowed by law, shall be taken and prosecuted in the same manner as provided by Rules 1 to 13 of these rules relating to appeals from administrative agencies of the Commonwealth . . ."

mon pleas courts of Philadelphia in the same manner as the Administrative Agency Law, supra, grants the right of appeal from a State administrative agency to the Dauphin County Court. The difficulty inherent in this line of reasoning is, as the court below recognized, that Rule 1*(a) merely sets forth the appellate procedure *if an appeal does in fact lie.* It does not grant any right of appeal in itself but rather only those already "allowed by law". The City's reliance on *Robert C. and Shirley D. Watkins v. Pauline Schwinger,* C.P. 7, June T., 1965, No. 4663, which purported to follow Rule 1*(a) et seq. in securing a writ of certiorari from the common pleas court in another Commission case involving discrimination in housing is misplaced; *Schwinger* is not binding on this Court. Moreover, since this is a case of first impression it is evident we must clarify the Fair Practices Ordinance so that such procedural errors as made in *Schwinger* are not repeated in the future.

The law is settled that where, as here, a statute creating an administrative agency does not *expressly* give a court of common pleas power to issue a writ of certiorari to that agency, no such authority exists: *Esbenshade v. Department of Public Instruction,* 181 Pa. Superior Ct. 232, 124 A. 2d 478 (1956), affirmed 387 Pa. 281, 127 A. 2d 678; *Nobles v. Piollet,* 16 Pa. Superior Ct. 386 (1901); *Pascale v. Morrisville Borough,* 8 Pa. D. & C. 2d 530 (1956); *Appeal of Philadelphia College of Law, Inc.,* 54 Pa. D. & C. 287 (1945). The City's quotation of *Sharps v. Revenue Commissioner,* 10 Pa. D. & C. 2d 463, 475 (1956) for the proposition that "there is always a right of appeal to the courts" from an administrative agency is taken out of context. In *Sharps,* the issue was whether an agency's factual findings could be considered final so as to bar review by *any* court. The *Sharps* court proclaimed that there was always some right of court review of an agency's finding of

facts no matter what the ordinance provided because an agency could not be a final arbiter of facts. In the case at bar, the issue is not *whether* the Commission's findings are conclusive or not—for the City concedes that some kind of review *is* available—but rather the question is *what* method of review is called for by the Ordinance.

Neither is there an appeal as a matter of right to our Court from the Commission's order. It is true that this Court *may* directly review the Commission's order by granting *in its discretion* the common law writ of certiorari: *Keystone Raceway Corp. v. State Harness Racing Commission,* 405 Pa. 1, 173 A. 2d 97 (1961); *Bell Appeal,* 396 Pa. 592, 152 A. 2d 731 (1959); *Freed v. Power,* 392 Pa. 195, 139 A. 2d 661 (1958); *Kaufman Construction Company v. Holcomb,* 357 Pa. 514, 55 A. 2d 534 (1947), but such decisions do not stand for the proposition that we *must* grant certiorari. "It is only where the statute is silent on the question of appeal that a review by certiorari *may* be had 'in the broadest sense' . . . .": *Kaufman Construction Company v. Holcomb,* 357 Pa. at 518, 519. (Emphasis added).

As the court below correctly noted, the fact that the Ordinance specifically provides for an enforcement proceeding in an appropriate court (§9-1108) if a respondent fails to comply with a Commission order would be a most important factor in persuading this Court to refuse to grant a petition for certiorari before the enforcement proceeding has taken place. It is a more desirable procedure under this Ordinance to combine review of the Commission order and the necessity to seek court sanction of the order in one enforcement proceeding.

For the reasons listed above, defendants had no right of *direct* appeal to either the common pleas courts of Philadelphia or to this Court; consequently, in the enforcement proceeding, they cannot be deemed to have

waived, by failing to exercise a nonexistent right, the opportunity to attack the order of the Commission.

The City's second contention that the trial court erred in ruling that the Fair Practices Ordinance, §9-1108 of the Philadelphia Code, required a trial de novo in an enforcement proceeding is essentially a question of statutory construction. Unless the Ordinance provides otherwise, there is no reason to treat the City differently than any other plaintiff in an equity suit, that is, to require the City to produce persuasive evidence before the chancellor. This contradicts the City's basic assumption that the City can rely on the record of the Commission for evidence before the chancellor unless the Ordinance states otherwise.

We agree with the court below that there are three factors which make a trial de novo in the enforcement proceeding the most reasonable interpretation of the Fair Practices Ordinance. The first factor is the silence of the Ordinance itself in limiting review to the record of the Commission. The only relevant section of the Ordinance (§9-1108) does not call for an appeal from or a judicial review of the order; on the contrary, it calls for the institution of an equity suit "to secure enforcement or compliance with the order or to impose the penalties set forth in Section 9-1109, or both."

The inference that this omission envisions a trial de novo in an enforcement suit is enforced by the wording of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, §10, as amended, 43 P.S. §960, which *does* specifically limit review of the State Commission's order. The relevant portion of the State Act (43 P.S. §960) reads: "When the Commission has heard and decided any complaint brought before it, enforcement of its order shall be initiated by the filing of a petition in such court, together with a transcript of the record of the hearing before the Commission,

. . . ." In *Cooney v. Katzen*, 41 Misc. 2d 236, 245 N.Y.S. 2d 548, the Supreme Court of New York limited its review of a New York State Commission Order because of the *explicit* language of 18 McKinney Executive Law, §298. "Section 298 of the law against discrimination provides in part, that the 'findings of the Commission as to the facts shall be conclusive if supported by sufficient evidence on the record considered as a whole.' " *Cooney v. Katzen*, 245 N.Y.S. 2d 548, 550.[2] In the face of the above specific examples, Philadelphia City Counsel in 1963 chose to say nothing of a limited review of the record in its Ordinance. We can only conclude that the omission was intentional.

The City vigorously opposes this conclusion by pointing out that the historical purpose of the 1963 amendments, §9-1101 et seq. of the Philadelphia Code, was to strengthen the adjudicating powers of the Commission and to make it more like the State Human Relations Commission. If this Court finds that a trial de novo is required, the City argues, the Commission will be as weak as before the 1963 amendments. However, while accepting the City's historical reasoning, we reject its conclusion. This history only makes the omission of legislative directives as to the scope of review the more meaningful. If City Council was indeed trying to model in 1963 a stronger Commission after the Pennsylvania State Commission, why did it not copy the State procedure of limitation of judicial review while copying everything else? Even if the answer to that question is that the City Council was uncertain whether it could legally limit judicial review, the Council's motives for failing so to do cannot be persuasive in construing the Ordinance.

---

[2] For a recent survey of State and Municipal Fair Housing Laws, see Pearl and Terner, Survey: Fair Housing Laws—Design for Equal Opportunity, 16 Stan. L. Rev., 849 (1964).

572

The second factor is the Ordinance's procedure for transcribing testimony. Section 9-1107(6) states: "The testimony taken at the hearing shall be under oath and *may* be transcribed." (Emphasis added). This suggests also that a de novo trial is required in the enforcement proceedings because if the Ordinance is otherwise construed to call for a limited review of the record, the language of the statute would have to read: "The testimony . . . *must* be transcribed." Without a *mandatory* transcription of the testimony the reviewing court would have no way of testing the validity of the Commission's order against the weight of the evidence. The City has tried to counter this argument by declaring that pre-1963 Commission Regulations §400:06(g)(5) and §400:06(h) in fact do require a mandatory transcription of testimony before the Commission and that section 2 of the 1963 Ordinance permits these regulations to remain in effect. However, §9-1110 only permits those regulations to remain in force which are not inconsistent with section 2, and §9-1107(6) *is* inconsistent with regulations §400:06(g)(5) and §400:06(h) by making transcription permissive, not mandatory. Implicitly, the City concedes this contention by trying to explain the purpose of permissive transcription as an effort to save unnecessary expense if a case is settled during or immediately after a hearing.

The third factor cited by the court below for a de novo trial is §9-1109, subtitled "Penalties", which provides that "Any person who shall violate any order of the Commission or the provision of this chapter shall be subject to a fine of not more than three hundred dollars ($300) or imprisonment for a period not exceeding ninety days or both in addition to such order or decree that may be issued by any court." Since §9-1109 permits court imposition of fines and/or imprisonment *in addition* to enforcement of the Commis-

sion's order under §9-1108, one can see that City Council did not provide for any difference between a civil or criminal enforcement proceeding. Because an administrative ordinance such as §9-1109 which imposes criminal penalties (here imprisonment and/or fine) can only be enforced in a de novo trial (cf. *Helvering v. Mitchell*, 303 U.S. 391, 402, 58 S. Ct. 630, 634; Davis, Administrative Law Treatise, §2.13, p. 133 (1958)) City Council must have intended the same procedure for solely civil proceedings. The City's counterargument that enforcement of a commission order and prayer for imprisonment or a fine are separate actions which should be tried in different courts following different procedures begs the question. The problem before this Court is not whether the criminal and civil proceedings under the Ordinance should be brought separately but rather what did City Council intend by failing to distinguish between the two. We conclude that the most reasonable construction of the Ordinance is that City Council contemplated the same procedure for both criminal and civil proceedings, that is, trial de novo.

Because this is a case of statutory interpretation of an Ordinance which has never been before this Court, there are no binding precedents. However, in an analogous situation under a Pittsburgh Fair Housing Ordinance (No. 523, 1958), a court of equity held that the City of Pittsburgh's counterclaim to enforce a Commission finding of discrimination was to be in the nature of a trial de novo: *Stanton Land Co. v. City of Pittsburgh*, 33 Pa. D. & C. 2d 756 (1963). The issue of scope of review of the Commission's order was not explored in *Stanton*. We, therefore, dismiss as speculation the City's effort to distinguish *Stanton* by contending a de novo trial was there held solely to avoid a Commission order from being attacked as an unlawful delegation of power due to lack of legislative stand-

ards in the Ordinance. One could equally speculate that any procedure for review would have satisfied the court's fear in *Stanton* of an unconstitutional delegation of power to the Commission as long as it did not permit the Commission to be "the last word for practical purposes" on the validity of its orders; 33 Pa. D. & C. 2d at 772, 773.

A trial de novo was also ordered in an enforcement proceeding, similar to the case at bar, in *City of New York v. 1001 Tenants Corporation,* 41 Misc. 2d 518, 247 N.Y.S. 2d 52 (1964). Just as in the case at bar, the New York court was asked to decide whether the City Commission of New York under Title X of Chapter 41 of the New York City Administrative Code had the same powers as the New York State Human Relations Commission to make conclusive findings of discrimination in the absence of any explicit language in the City Code. In ruling that New York City Council must have intended trial de novo in an enforcement proceeding because the statute gave the Commission no explicit power to make administrative determinations, the Court suggested a legislative remedy which is equally pertinent to the case at bar: "Alternately, the Commission could be given greater power to make findings, or more 'teeth' to make its own orders, subject only to judicial review. Such a change can only be acted upon by the law making body." 247 N.Y.S. 2d at 56.

Although the New York City Anti-Discrimination Commission has no power to issue orders unlike the Commission, *City of New York v. 1001 Tenants Corporation,* supra, is relevant to our case because there, as here, the court had to interpret a statute which was silent as to what kind of hearing City Council required in an enforcement proceeding. The New York court found significant, as we do here, that Council's failure to use the State Commission's explicit procedure of limited review as an example indicated that Council intended a different result—trial de novo.

The City's reliance on *Lesniak v. Fair Employment Practices Commission,* 364 Mich. 495, 111 N.W. 2d 790 (1961) is misplaced. There the Supreme Court of Michigan held that an anti-discrimination statute, with a procedure similar to the Philadelphia Fair Practices Ordinance except that it specifically provided for de novo review, had to be construed to grant the more limited review of certiorari in order to avoid being declared unconstitutional as an unlawful delegation of administrative authority. However, unlike the case at bar, the Michigan statute contained internal contradictions to its express provision for a de novo trial. "The most casual examination of the appeal provisions contained in sections 8 and 10 of the fair employment practices act reveals substantial ambiguities and inconsistencies:" 111 N.W. 2d at 793. The courts' reasoning is therefore based on the resolution of the contradiction of specifically providing for a de novo trial and equally specifically providing for appeal to be based on the transcript made before the Commission.[3] No such inconsistencies exist in the Philadelphia Fair Practices Ordinance.

The City has vigorously argued that, if this Court concludes that the enforcement proceeding must be a trial de novo, the efforts of the Commission will be largely wasted, especially in hearing testimony under oath because a court will have to duplicate the Commission's efforts if an enforcement proceeding is required. While conceding that a de novo trial may not be the most efficient procedure under the Ordinance, we conclude that it is the procedure which the statute itself seems to require. We would add further that our decision will not destroy the efficacy of the Commission

---

[3] For example, "Sec. 8(b) . . . Thereupon, the Commission shall file a transcript of the record upon the hearing before it. Sec. 8(c) An objection that has not been urged before the Commission shall not be considered by the court, . . . ."

as the City predicts. As defendants have pointed out, the report of the Commission indicates that out of the more than sixty complaints of alleged discrimination in housing in 1964, the case at bar is the only one in which the City was required to bring an enforcement proceeding. This implies that the procedures before the Commission *are* effective in reaching settlement without need of a court order. Just as the City is reluctant to prove its case again in court, respondent will be reluctant to undergo the time and expense of defending his position at a full trial. Thus, it is still in the best interests of both the City and the respondent that the controversy be settled by the Commission.

The City contends that, even if this Court holds that a trial de novo is required, the Court below erred in refusing to admit the Commissions' report as "some evidence" at the trial. We reject this argument for the aforementioned reasons that we held that the Ordinance called for a trial de novo. It would be inconsistent to find that the failure of the Ordinance to dictate any procedure of limited review necessitates a new trial at an enforcement proceeding and then, in effect, grant a limited review anyway by admitting the entire record of the Commission as evidence. See *Stanton Land Co. v. City of Pittsburgh*, 33 Pa. D. & C. 2d 756 (1963) ; *City of New York v. 1001 Tenants Corporation*, 41 Misc. 2d 518, 247 N.Y.S. 2d 52 (1964). If the record was admitted, a trial de novo would be a mere formalism because the City would undoubtedly rest its case on the testimony taken before the Commission.

For the foregoing reasons, the decree below is affirmed. City to pay costs.