348 A.2d 742

**ERIE HUMAN RELATIONS COMMISSION ex rel. Sanford DUNSON, Appellee,**

v.

**ERIE INSURANCE EXCHANGE and H. O. Hirt, Manager, Appellants.**

Supreme Court of Pennsylvania.

Argued March 10, 1975.

Decided Nov. 26, 1975.

Rehearing Denied Jan. 5, 1976.

242

William F. Illig, MacDonald, Illig, Jones & Britton, Erie, for appellants.

Lawrence L. Kinter, T. D. Colbridge, Erie, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On June 10, 1971, H. O. Hirt, President and Manager of the Erie Insurance Exchange [Exchange], discharged Sanford Dunson, a black man, from his employment with the Exchange. On June 14, 1971, Dunson filed a formal complaint with the Erie Human Relations Commission [Commission] alleging unlawful racial discrimination in his discharge. Subsequently, on March 6, 1972, after two informal investigatory hearings revealed that probable cause did exist for crediting Dunson's allegations, a formal public hearing on the charge was held. On April 14, 1972, the Commission determined that the Exchange was guilty of unlawful racial discrimination in the discharge of Dunson. The Commission ordered the Ex-

change to reinstate Dunson to the position he had formerly held and to recompense Dunson for back pay from the date of his discharge. The Exchange received notice of this adjudication on April 15, 1972. However, it failed to comply with the Commission's directives; nor did it appeal the Commission's findings.

Failing to obtain compliance with its order the Commission, on October 16, 1972, filed a complaint in equity with the Court of Common Pleas of Erie County seeking a mandatory injunction to compel compliance with its prior order. Annexed to the complaint was a copy of the Commission's findings and order. The Exchange then filed preliminary objections in the nature of a demurrer on the grounds that the Commission, in its complaint, had failed to sufficiently allege unlawful racial discrimination and had failed to adequately identify the reason for Dunson's discharge. The court, after a review of the record, sustained the Exchange's preliminary objections and dismissed the complaint. The court found that the Commission had improperly concluded there was unlawful racial discrimination in Dunson's discharge.

On appeal the Commonwealth Court held that the failure of the Exchange to take an appeal from the Commission's adjudication and order of April 14, 1972, barred it from then contesting the merits of the Commission's adjudication. The Commonwealth Court, therefore, determined that it was improper for the Court of Common Pleas to pass upon the merits of the Commission's adjudication that unlawful racial discrimination had precipitated Dunson's discharge. The record was remanded to the court below so that the Exchange could present reasons for its noncompliance with the Commission's order. Exchange requested and we granted allocatur.

Initially, it must be noted that Erie Human Relations Ordinance No. 19–1963, which amended Official Ordinance No. 14–1954, makes no provision for appeals from adjudications of the Commission. The Ordinance

merely provides that "in the event any person refuses or fails to comply with any cease and desist order issued by the Commission, for a period of ten (10) days from the service of said order, by registered mail or personally, the Commission shall certify the case and the entire record of its proceedings to the City Solicitor who shall invoke the aid of an appropriate court to impose the penalties provided in Section 11 of this Ordinance and by appropriate action secure enforcement of the order." [1]

However, the Local Agency Law [2] specifically prescribes the procedure to be followed in perfecting an appeal from an adjudication rendered by a local agency such as the Commission.[3] Section 7 of the Local Agency Law [4] provides:

"Any person aggrieved by a final adjudication who has a direct interest in such adjudication shall have the right to appeal therefrom. Such appeal, unless otherwise provided by a statute authorizing a particular appeal, shall be taken within thirty days to the court of common pleas of any judicial district in which the local agency has jurisdiction."

Instantly, the Exchange failed to appeal from the Commission's April 14, 1972 adjudication and order. Nevertheless, it contends that it should be permitted to contest the merits of the Commission's adjudication and order in the present proceedings for enforcement brought by the Commission. We disagree.

1. See Section 10(a) of the Erie Human Relations Ordinance, supra.

2. Act of December 2, 1968, P.L. 1133, 53 P.S. § 11301 et seq.

3. Section 2 of the Local Agency Law, supra, 53 P.S. § 11302(2) provides that the term local agency "means any department, departmental board or commission, independent administrative board or commission, office or other agency of a political subdivision now in existence or hereafter created, empowered to determine or affect private rights, privileges, immunities or obligations by adjudication . . . ."

4. 53 P.S. § 11307.

As stated in the title to the Local Agency Law, when the legislature enacted the Local Agency Law it sought to implement Section 9 of Article V of the Pennsylvania Constitution [5] " 'by providing for a right of appeal in all cases from adjudications of administrative agencies of political subdivisions; . . ..' " See *Smethport Area School District v. Bowers,* 440 Pa. 310, 315, 269 A.2d 712, 715 (1970). Previously, no such right of appeal had existed because the Administrative Agency Law[6] only provided for appeals from adjudications of state agencies. *Philadelphia v. Price,* 419 Pa. 564, 567, 215 A.2d 661 (1966). In so acting, the legislature provided for a uniform and comprehensive method of appeal from a decision of a local agency as that term is defined in the Local Agency Law. As noted in *Pennsylvania Life Insurance Company v. Pennsylvania National Life Insurance Company,* 417 Pa. 168, 173, 208 A.2d 780, 783 (1965), "[w]here such a provision is made for direct appeal to a court from an administrative decision, such procedure should be followed. [Cite omitted.] Such a policy insures orderly procedure."

■■ Moreover, it is well settled that "where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued, to the exclusion of other methods of redress [cites omitted]. This is particularly true of *special statutory appeals from the action of administrative bodies. White et al. v. Old York Road Club et al.,* 318 Pa. 346, 178 A. 3; *Taylor v. Moore,* 303 Pa. 469, 154 A. 799; *Ermine v. Frankel et al.,* 322 Pa.

---

**5.** Article V, Section 9 of the Pennsylvania Constitution provides: "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

**6.** Act of June 4, 1945, P.L. 1388, as amended, 71 P.S. § 1710 et seq.

70, 185 A. 269." [Emphasis supplied.] *Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania,* 332 Pa. 15, 23–24, 1 A.2d 775, 780 (1938). Cf. *Pennsylvania Life Insurance Company v. Pennsylvania National Life Insurance Company,* supra. It follows that the Exchange, having failed to appeal from the Commission's adjudication and order of April 14, 1972, is now precluded from contesting the merits of the Commission's decision in subsequent enforcement proceedings.

It is true that this Court in *Philadelphia v. Price,* supra, did permit a collateral attack upon the merits of an adjudication rendered by the Philadelphia Commission on Human Relations in the enforcement proceeding brought to enforce the Commission's order. However, the considerations which led this Court in *Price* to permit such an attack upon the merits of the Commission's adjudication are not present here. It must be noted that the decision in *Price* predated both the Constitutional Amendments of 1968 and the enactment of the Local Agency Law. Further, in *Price* this Court first considered whether there was any right available to directly appeal the Commission's adjudication. Then, having determined that no right of direct appeal existed, the Court stated at 419 Pa. 569–570, 215 A.2d at 664; "For the reasons listed above, defendants had no right of *direct appeal* to either the Common Pleas Courts of Philadelphia or to this Court; consequently, in the enforcement proceeding, they cannot be deemed to have waived, by failing to exercise a non-existent right, the opportunity to attack the order of the Commission." If in *Price* there existed the right to directly appeal the Commission's adjudication, a different result would have been necessary.

The Exchange points out, correctly, that the Erie Human Relations Ordinance is patterned after the provi-

sions of the Pennsylvania Human Relations Act [7] which provides: "In the event of a conflict between the interpretation of a provision of this act and the interpretation of a similar provision contained in any municipal ordinance, the interpretation of the provision in this act shall apply to such municipal ordinance." [8]  It points out that the court in which the Erie Human Relations Commission seeks enforcement of its orders is limited to just that, namely, an enforcement of the Commission's order. However, if the Pennsylvania Human Relations Commission seeks a court's assistance in enforcement of an order, the court may "make and enter, upon the pleadings, testimony and proceedings set forth in such transcript, an order or decree enforcing, modifying and enforcing as so modified, or setting aside, in whole or in part, the order of the Commission." [9]  The Exchange contends that, due to this difference in the powers granted to the court of enforcement, the supremacy clause, outlined above, mandates the enforcement proceedings of the state act be deemed applicable to the Erie Human Relations Ordinance which, implicitly, would give the Exchange the right to contest the merits of the Commission's adjudication in the enforcement proceeding.

■■  We need not determine whether the Pennsylvania Human Relations Act permits a challenge to the merits of a prior adjudication in the enforcement proceeding brought to enforce that adjudication.  For it is clear that there exists no "conflict between the *interpretation* of a provision of this act and the *interpretation* of a similar provision contained in any municipal ordinance." [Emphasis supplied.]  In fact, no interpretation of the two provisions herein involved is called for. These two provisions are in clear language and, while the

7.  Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 951 et seq.

8.  43 P.S. § 962(b).

9.  43 P.S. § 960.

procedures outlined therein are not the same, it is not the "interpretation" of these provisions which is different. Rather, each statute merely provides different procedures for the enforcement of prior adjudications. It is only when a similar substantive provision is contained within both the state act and a municipal act with disparate interpretations given, that the supremacy clause becomes applicable.

Therefore, the Order of the Commonwealth Court is affirmed. Costs on Exchange.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice (dissenting).

I dissent.

This is a simple case. The Pennsylvania Human Relations Act provides that a person, against whom enforcement of a Commission order is sought, may challenge that order at the enforcement proceeding. The PHRA also provides that any conflict between it and a local human relations ordinance would be controlled by the state act.[1] Here the local act purports[2] to deny the Exchange the right to challenge the Commission's order at the enforcement hearing. The state act says the Exchange may challenge that order. The state act by its own terms controls, and the Exchange should be permitted to challenge the order.

The trial court, however, erred when it sustained the Exchange's preliminary objections to the Commission's

1. The supremacy clause of the PHRA refers to conflicting "interpretations" of the PHRA and local human relations ordinances. The majority asserts that because the language of the conflicting provisions is clear no "interpretations" are involved and the supremacy clause does not operate. I disagree.

2. As I read the local act it is silent concerning what is to occur at the enforcement hearing. It appears to me that the majority has "interpreted" the local act bringing it within the operation of the supremacy clause of the PHRA even under the majority's reading of that clause.

complaint in equity seeking enforcement of its order. The complaint alleged that complainant's discharge was the result of discrimination, that it had issued an order calling for his reinstatement with backpay, and that the Exchange had not complied with that order. This was sufficient. As we said in *International Union of Operating Engineers v. Linesville Construction Co.*, 457 Pa. 220, 223, 322 A.2d 353, 356 (1974), "where a preliminary objection to the complaint . . . is filed, there is no burden on the plaintiff to prove the cause of action. The issue then before the court, and the only issue is, whether the facts in the complaint itself are sufficient to entitle the plaintiff to relief." The Commission alleged facts sufficient to entitle it to relief and the matter should have gone to trial, at which Exchange could have challenged the factual basis for the order.

I would reverse the order of the Commonwealth Court to the extent that it bars the Exchange from challenging the Commission's order at the enforcement proceedings, and remand the cause to the trial court.