393 A.2d 420

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Appellant,**

**v.**

**AMMON K. GRAYBILL, JR., INC., REAL ESTATE.**

Supreme Court of Pennsylvania.

Reargued Jan. 12, 1978.

Decided Oct. 5, 1978.

144

Sanford Kahn, Gen. Counsel, Harrisburg, Roy Yaffe, James D. Pagliaro, Asst. Gen. Counsels, Philadelphia, for appellant.

Jack C. Briscoe, Dennis E. Haggerty, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

The question presented in this appeal is whether an intended agreement between lawyers for the appellant Pennsylvania Human Relations Commission (the "Commission" or the "PHRC") and the appellee corporation, read into the record by the attorney for appellant, without objection, at a hearing before a panel of the Commission became a final, enforceable consent decree upon subsequent ratification by the PHRC, but in the absence of any showing of subsequent approval by the appellee.

The following history of the case is relevant. On February 17, 1972, two separate complaints were filed with the PHRC pursuant to Section 9 of the Pennsylvania Human Relations Commission Act (the "Act").[1] In the first complaint, Joseph F. Dennison, a prospective home buyer, alleged that the appellee Ammon K. Graybill, Jr., Inc., Real Estate ("Graybill") committed a discriminatory and hence unlawful act in refusing to sell him a home. A second complaint, filed by James A. Lentz, a former employee of

1. Act of October 27, 1955, P.L. 744, § 9, as amended, 43 P.S. § 959 (Supp.1978).

Graybill, alleged that Graybill had committed unlawful discriminatory acts in compelling Lentz to discriminate against Mr. Dennison. Answers denying the charges were filed by Graybill.

A hearing on the complaints was held by a panel of three members of the Commission on November 1, 1972. At the commencement of the afternoon session, the PHRC counsel announced that he and the lawyer for Graybill had reached an agreement. The Commission lawyer stated:

> "I would like to read into the record the points of agreement between the Commission and the Respondent with the stipulation that the language we are going to be using will not be the final language in the consent order that will be presented to the Respondent and the Commission for final adoption.
>
> \*    \*    \*    \*    \*    \*
>
> "These would be the points in a consent order and decree in both cases."

(R. 108a).

Thereupon the terms of the provisional agreement were read into the record.[2] The panel chairman stated that the agreement would be "presented to the full Commission at its next meeting," and adjourned the hearing.

▮ According to the petition for enforcement filed in the Commonwealth Court, the Commission did on December 15, 1972, ratify a proposed consent order embodying in substance the terms of agreement reached at the hearing. There is no showing of any kind, however, that any similar ratification was made by Graybill, or even that the consent decree in the form approved by the Commission was ever submitted to Graybill for inspection or signature. Indeed, the record shows nothing between the close of the Commission's November hearing and the filing of the petition for

2. The provisional agreement stipulated that Graybill would pay certain sums to Dennison as damages and would cease and desist from any future discriminatory activity in the operation of its real estate brokerage business. In light of our disposition of this case, no purpose would be served by a more detailed recital of the terms of the asserted agreement.

enforcement in April, 1973. The petition asserted that the appellee had failed to comply with the agreement, a copy of which, in the form of a photocopy of the final nine pages of the transcript of the November 1, 1972 hearing, was attached and marked "Exhibit A."[3] The Commonwealth Court, on its own motion, dismissed the enforcement petition, finding the record "barren of any evidence that the [appellee] agreed to or adopted and thereby consented to any final consent order . . .." " We affirm.[4]

Although a consent decree does not represent a legal determination by a court or administrative tribunal of the matters in controversy, *Universal Builders Supply, Inc. v. Shaler Highlands Corporation*, 405 Pa. 259, 265, 175 A.2d

3. The copy of the petition for enforcement as printed in the reproduced record submitted to this Court by the Commission as appellant (R. 123a–127a) does not contain these nine pages of transcript as "Exhibit A". Instead, the printed record contains immediately before the petition for enforcement a copy of a document entitled "Consent Order and Decree" (R. 116a–122a). This instrument is listed under that title in the Index to Record at p.i thereof. At the end of this paper appears the printed name of "Ammon K. Graybill, Jr., President, Ammon K. Graybill, Jr., Inc. Real Estate." It has an attestation line but no name for Graybill's secretary appears thereon. Beneath Graybill's name appears the name of Homer C. Floyd as Executive Director of the Commission. There follows a statement, purportedly signed by E. E. Smith, Commission Chairman, and Dr. Robert Johnson Smith, Commission Secretary, that the decree was approved by the Commission on an unspecified date in December, 1972. No such "Consent Order and Decree" is to be found in the original record submitted to us in this case. So far as appears, this paper was not before the Commonwealth Court, and it clearly was not the "Exhibit A" which was attached to the petition for enforcement. This instrument, therefore, has no place in the reproduced record, and the petition for enforcement as reproduced is incomplete for want of an "Exhibit A."

Compliance with our rules relative to the contents of reproduced records on appeal, *see* Pa. R.A.P. 2152–2154, is mandatory. Noncompliance may result in imposition of sanctions. *See* Pa. R.A.P. 2101.

4. Jurisdiction is in this Court by virtue of Section 203 of Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, 17 P.S. § 211.203 (Supp.1978), since superseded by Judicial Code § 723(a), 42 Pa.C.S. § 723(a) (effective June 28, 1978). See *Pa. Human Relations Commission v. School District of Philadelphia, et al. and Pennsylvania Human Relations Commission v. School District of Pittsburgh*, 480 Pa. 398, 411–412, 390 A.2d 1238, 1244–1245 (1978).

58, 61 (1961), it nevertheless has important consequences. A consent decree has a *res judicata* effect, binding the parties with the same force and effect as a final decree rendered after a full hearing upon the merits. *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.*, 456 Pa. 436, 440, 318 A.2d 918, 921; *Zampetti v. Cavenaugh*, 406 Pa. 259, 265–66, 170 A.2d 906, 909. *See* Annotation, "Res judicata as affected by fact that former judgment was entered by agreement or consent," 2 A.L.R.2d 514, 528 (1948). In the absence of fraud, accident or mistake, a court has neither the power nor the authority to modify or vary the terms of a consent decree. *Universal Builders Supply, Inc., supra*, 405 Pa. at 265, 175 A.2d at 61; accord, *Jones Memorial Baptist Church v. Brackeen*, 416 Pa. 599, 603, 207 A.2d 861, 863 (1965), 27 Am.Jur.2d, Equity, § 246 (1966). Nor is such a decree subject to a collateral attack. *International Organization Masters, Mates and Pilots of America, Inc., supra*, 456 Pa. at 441, 318 A.2d at 921, citing *Baran v. Baran*, 166 Pa.Super. 532, 537, 72 A.2d 623, 625 (1950).

■ Given the conclusive nature of a consent decree, it is imperative that each party to it has willingly and freely assented to its terms. Like any contract, a consent decree requires mutuality of understanding and concerted action by the parties. *Universal Builders Supply, Inc., supra* 405 Pa. at 265, 175 A.2d at 61. As this Court observed in *Archbishop v. Karlak*, 450 Pa. 535, 299 A.2d 294 (1973), speaking through Mr. Justice (now Chief Justice) EAGEN, "[t]he very nature of a consent decree requires the understanding of or ratification by the respective parties." 450 Pa. at 541, 299 A.2d at 297. In the case at bar the understanding of the parties was that the provisional agreement was not in final form and could be subject to further modification. As the Commission's lawyer stated at the hearing, "[T]he final language in the consent order . . . will be presented to [Graybill] and to the Commission for final adoption." (R. 108a). For the agreement to be final and binding manifestly required

ratification by Graybill as well as by the Commission, but by the present action the Commission seeks to enforce a purported consent decree which only it has approved. Unilateral action cannot substitute for the mutual assent of all concerned parties which is of the essence of consent decrees.

No evidentiary hearing was necessary to enable the Commonwealth Court to ascertain the lack of finality in the purported consent decree it was being asked to enforce, and hence the lack of any basis upon which to invoke the jurisdiction of that court under the terms of Section 10 of the Human Relations Act, 43 P.S. § 960. Indeed, the Commission does not object to the fact that no hearing was held upon its petition; its argument is simply that the record before the Commission panel shows that the agreement reached by the attorneys was a final one and that Graybill cannot now be heard to deny that fact.[5] As we have already made clear, there is no merit to this position. The hoped-for agreement was never consummated. Instead of seeking to enforce a non-existent consent decree, the Commission should have proceeded with the complaints before it by resumption of the hearing and the eventual entry of whatever order it determined to be appropriate.

Order affirmed.

MANDERINO, J., concurs in the result.

ROBERTS, J., files a dissenting opinion in which NIX, J., joins.

ROBERTS, Justice, dissenting.

On December 15, 1972, appellant, Pennsylvania Human Relations Commission, approved and issued a Consent Order

---

5. The Commission also contends that Graybill should not have waited until the enforcement proceeding to challenge the purported consent decree, but should have taken a timely appeal from that decree. See and compare *Erie Human Relations Commission ex rel. Duncan v. Erie Insurance Exchange*, 465 Pa. 240, 348 A.2d 742 (1975). This argument, of course, is circular, for the very question at issue is whether the record reveals an order or decree from which an appeal could be taken.

and Decree which reflected the agreement of appellee, Ammon K. Graybill, Inc., to refrain in the future from engaging in conduct which would violate the Pennsylvania Human Relations Act.[1] Despite notice of the PHRC's order of December 15, Graybill failed to file an appeal in the Commonwealth Court. Instead, Graybill did nothing until April 6, 1973, when the PHRC sought to enforce its Consent Order.

The majority rejects the PHRC's claim that Graybill improperly postponed its challenge to the PHRC's December 15 Consent Order. According to the majority, the lack of evidence of Graybill's acquiescence in the December 15 order rendered the order not only invalid, but also non-appealable.[2] I dissent.

Nothing in Section 10 of the Human Relations Act justifies the majority's conclusion. Section 10 of the Human Relations Act, 43 P.S. § 960, provides that "any order" of the Pennsylvania Human Relations Commission may be reviewed under the Administrative Agency Law.[3] Indeed, this Court has held that a respondent's failure to appeal a local human relations commission's order precludes the respondent's subsequent attack on the order in enforcement proceedings. *Erie Human Relations Commission v. Erie Insurance Exchange*, 465 Pa. 240, 348 A.2d 742 (1975). Most

1. Act of October 27, 1955, P.L. 744, § 1 et seq., 43 P.S. § 951 et seq. (as amended 1964 and Supp.1978).

2. The majority addresses the controlling issue in this case in footnote 5:

> "5. The Commission also contends that Graybill should not have waited until the enforcement proceeding to challenge the purported consent decree, but should have taken a timely appeal from the decree. See and compare *Erie Human Relations Commission, ex rel. Sanford Duncan v. Erie Insurance Exchange*, 465 Pa. 240, 348 A.2d 742 (1975). This argument, of course, is circular, for the very question at issue is whether the record reveals an order or decree from which an appeal could be taken."

Thus, the majority conditions the appealability of the December 15 order on its validity, rather than on the fact that a Final Order has been entered.

3. Act of June 4, 1945, P.L. 1388, § 1 et seq., 71 P.S. § 1710.1 et seq. (as amended 1962 and Supp.1978).

recently, this Court unanimously concluded that a party aggrieved by the action of an arbitrator under The Public Employee Relations Act cannot postpone until enforcement proceedings a challenge to the arbitrator's award. *Pennsylvania Labor Relations Board v. Commonwealth of Pennsylvania*, 478 Pa. 582, 387 A.2d 475 (1978) (permitting the aggrieved party to "refuse to abide by [the terms of the award] . . . forces the party in whose favor the arbitrator originally ruled to seek enforcement of the award [under an Act 195] enforcement action"). Similarly, in *Commonwealth v. Derry Township*, 466 Pa. 31, 39, 351 A.2d 606, 610 (1976), we held that "[t]he failure to appeal [an order of the Department of Environmental Resources] made that order final and foreclosed any attack on its content or validity in the [subsequent] enforcement proceedings." In light of these decisions interpreting legislative schemes comparable to the Human Relations Act, Graybill's attack on the validity of the PHRC's Consent Order and Decree in enforcement proceedings should be foreclosed.

I would therefore vacate the order of the Commonwealth Court and remand for proceedings consistent with this opinion.

NIX, J., joins in this dissenting opinion.