## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lawrence J. Kansky, DPM,     :
     Petitioner     :
            :
   v.         :
            :
State Board of Podiatry,     :  No. 743 C.D. 2022
     Respondent   :  Submitted: March 31, 2023

BEFORE:  HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE ELLEN CEISLER, Judge
      HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON    FILED: July 21, 2023

     Lawrence J. Kansky, DPM (Kansky), representing himself,[1] petitions for review of a Final Order of the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs, State Board of Podiatry (Board), dated June 21, 2022. Kansky is seeking reinstatement of his license to practice podiatry, which he voluntarily relinquished in 2008. In its Final Order, the Board reinstated Kansky's license to "expired–on probation" status and set forth a number of conditions Kansky would have to satisfy in order to apply for reactivation of his license. Certified Record (C.R.), Item #18. Upon review, we affirm the Board's Final Order.

---

[1] Kansky is also a licensed attorney.

## I. Background

Kansky was licensed as a podiatrist in Pennsylvania. Reproduced Record (RR) at 3a & 34a. In the course of his practice, he maintained three medical offices. *Id.* at 38a & 171a. He sometimes administered and dispensed the opiate hydrocodone, a controlled substance, to patients for pain related to his treatment of their medical conditions. *Id.* at 55a, 83a & 171a. Kansky had shipments of hydrocodone delivered to his home and then distributed it among his three offices. *Id.* at 38a. Kansky did not maintain records concerning his administering and dispensing of hydrocodone. *Id.* at 4a.

In 2007, law enforcement authorities disclosed to Kansky that they were investigating his purchases of hydrocodone and requested a log of such purchases relating to the period from January to June 2006. RR at 3a-4a & 171a. Kansky had no such log; he acknowledged his lack of record-keeping and also admitted that he had been self-administering hydrocodone, ostensibly to treat his dental pain. *Id.* at 4a, 37a-39a & 171a.

In October 2007, Kansky voluntarily surrendered his podiatry license to the Board, stating in his accompanying letter that he was retiring completely and permanently from the practice of podiatry and was requesting that his license be placed on permanent inactive status. RR at 1a. In November 2007, Kansky pleaded no contest[2] in the Court of Common Pleas of Luzerne County to one count of

---

[2] A defendant's plea of no contest has been described as "not admitting he committed the crime but agreeing that should the matter proceed to the scheduled trial the Commonwealth would likely be able to meet its burden of proof with the effect being the same and that is a conviction for the noted charges . . . ." *Commonwealth v. Ortiz* (Pa. Super., Nos. 1690 & 1691 MDA 2019, filed Mar. 27, 2020), slip op. at 4 (quoting county court's post-conviction relief decision) (additional quotation marks omitted). *Ortiz* is cited as persuasive pursuant to Section 65.37(A) of the Superior Court's Internal Operating Procedures, 210 Pa. Code § 65.37(A). *See also*

acquiring a controlled substance, *i.e.*, hydrocodone, by misrepresentation, fraud, forgery, or deception, in violation of Section 13(a)(12) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[3] 35 P.S. § 780-113(a)(12). *Id.* at 4a. He received a sentence of six months' probation without verdict,[4] after which the charges were subject to possible dismissal. *Id.*

In March 2008, Kansky executed a Consent Agreement and Order (Consent Order), which the Board accepted in April 2008. RR at 3a-___ (unnumbered).[5] In the Consent Order, Kansky expressly acknowledged that he had failed to maintain required records when administering and dispensing hydrocodone

---

*Commonwealth v. Camacho-Vasquez*, 81 Pa. D. & C.4th 353, 365 (C.P. 2007) (explaining that a plea of no contest "requires that a defendant acknowledge he has no defense").

[3] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 – 780-144.

[4] Section 17 of the Drug Act allows a court to impose a sentence of "probation without verdict" if the defendant pleads no contest to a nonviolent offense under the Drug Act and "proves he is drug dependent." *Kearney v. Bureau of Pro. & Occupational Affs., State Bd. of Med.*, 172 A.3d 127, 132 (Pa. Cmwlth. 2017) (quoting 35 P.S. § 780-117). Upon imposition of a sentence of probation without verdict, the defendant's plea is "held in abeyance, or not accepted," and if the defendant satisfactorily completes the terms and conditions of probation, "the trial court dismisses the charges and there is no verdict or finding of guilt in the matter." *Kearney*, 172 A.3d at 132. We note that the Drug Act's requirement of proof of drug dependency in order to qualify for probation without verdict stands in contrast to Kansky's repeated insistence that he has never been dependent on drugs. *See, e.g.*, RR at 83a-84a, 112a, 172a & 176a.

As this Court observed in *Kearney*, "[i]n some statutes, our General Assembly, without using the word 'conviction,' has expressly included the phrase 'probation without verdict' to describe the basis upon which a licensing board can refuse, suspend, or revoke a professional license." 172 A.3d at 132. The Podiatry Practice Act, Act of March 2, 1956, P.L. (1955) 1206, *as amended*, 63 P.S. §§ 42.1 – 42.21c (Podiatry Act), is one such statute. Section 16(a)(2) of the Podiatry Act allows the Board to suspend, revoke, cancel, or refuse to grant a license as a consequence of "[p]leading guilty or [no contest] to, or being found guilty, *or receiving probation without verdict*, disposition in lieu of trial, or an Accelerated Rehabilitative Disposition in the disposition of felony charges or an offense in connection with the practice of podiatric medicine . . . ." 63 P.S. § 42.16(a)(2) (emphasis added).

[5] The Consent Order's final page is not numbered but falls between pages 7a and 8a in the reproduced record.

3

to patients and that he had self-medicated with hydrocodone. *Id.* at 4a. He further acknowledged that his conduct, including his plea of no contest and his sentence of probation, made him subject to disciplinary action under the Podiatry Practice Act (Podiatry Act). *Id.* at 5a. The Consent Order allowed Kansky to apply for reinstatement of his license after a period of at least three years. *Id.* at 6a. However, reinstatement would not be automatic, as the Consent Order provided further that "[s]hould the Board *choose* to reinstate [Kansky's] license to practice podiatry, it may reinstate the license *subject to any terms and conditions that the Board in its sole discretion deems to be reasonable and appropriate*, after reasonable notice and a hearing." *Id.* (emphasis added). The Consent Order also explicitly provided that it "constitute[d] a public action" and that the Board would report it "to entities including, but not limited to, the National Practitioner Data Bank, the Healthcare Integrity and Protection Data Bank, if applicable, the Federation of State Medical Boards, the licensing authority of any state or jurisdiction, government entities, and any private or public health care facility." *Id.* at 5a-6a.

Kansky verified the facts and statements in the Consent Order "subject to the criminal penalties of Section 4904 of the Crimes Code, 18 Pa.C.S. § 4904[6]

---

[6] Section 4904(a) and (b) of the Crimes Code provides:

(a) In general.--A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:

(1) makes any written false statement which he does not believe to be true;

(2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or

4

relating to unsworn falsification to authorities." RR at ___ (unnumbered).[7] The Consent Order also contained a statement that the parties intended to be legally bound by its provisions. *Id.* at 5a. Significantly, Kansky was represented by legal counsel in connection with his execution of the Consent Order. *Id.* at 35a; C.R., Item #3 at 14.

In December 2020, Kansky applied to the Board for reinstatement of his podiatry license. RR at 8a-9a & 11a. He submitted a criminal record check, a verification that he had not practiced podiatry since surrendering his license, an updated *curriculum vitae*, documentation of continuing medical education credits from 2012, and a psychiatric report. *See id.* at 8a-9a & 11a-13a.

The Board appointed its Chief Hearing Examiner to hold a hearing on Kansky's application; that hearing was held in April 2021. RR at 16a. Kansky, who is now an attorney, represented himself at the hearing. *Id.* at 17a On cross-examination by counsel for the Board, Kansky made a number of critical admissions.

Kansky acknowledged that in the Consent Order, while represented by legal counsel, he admitted that he had not kept legally required records concerning

---

(3) submits or invites reliance on any sample, specimen, map, boundary mark, or other object which he knows to be false.

(b) Statements "under penalty".--A person commits a misdemeanor of the third degree if he makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.

. . . .

18 Pa.C.S. § 4904(a) & (b).

[7] The cited page is not numbered but falls between pages 7a and 8a of the reproduced record.

the hydrocodone he dispensed to patients. RR at 36a-38a. Kansky also admitted he had hydrocodone delivered to his house and then distributed it among his three offices. *Id.* at 38a. He admitted that doing so violated applicable regulations, but he claimed he did not know at the time that his conduct was not legal. *Id.* at 55a-56a. Nonetheless, he specifically acknowledged the Board's authority to take disciplinary action against him based on his sentence of probation without a verdict on the felony charge to which he pleaded no contest. *Id.* at 41a.

Kansky also admitted to self-medicating with hydrocodone for dental pain. RR at 38a-39a. In addition, he admitted he may also have self-medicated at times for other maladies such as injuries and headaches. *Id.* at 39a. He testified that when prescribing opioids and narcotics, he was required to practice within the scope of his license and keep documentation of the prescribed medication in the patient's file. *Id.* at 54a. However, he offered no evidence that he did either regarding his self-medication with the hydrocodone he purchased for his podiatry practice.

In his closing argument, Kansky "agree[d] with just about everything [the Board's counsel] said because the issues he brought up ma[d]e sense . . . ." RR at 96a. Kansky specifically agreed that he needed some continuing education credits and needed "to satisfy the Board a little bit further regarding competence." *Id.* The only concern he expressed was with how the Board would decide how he should be monitored to determine his competence; he requested that his wife, an internist, be allowed to monitor him because "that would be the easiest." *Id.* at 98a. In the alternative, he requested monitoring by "a local podiatrist." *Id.* at 99a. Kansky also stated, "I don't have a problem with taking assessment exams and then I have confidence I'll pass but if I don't and they [sic] therefore recommend some

6

corrective measures of [continuing education] if I was weak in a subject I don't have a problem with that." *Id.* Finally, Kansky commented:

> I'll follow rules and regulations. But law school taught me one thing, that if I think it's incorrect I need to exercise my right at the time. And once that's vetted and they [sic] make a ruling that's the end of it . . . .
>
> As [the Board's counsel] said I was ignorant, and I really was . . . . But it is what it is. And you can't go back. I can only go forward. And that's what I want to do . . . .

*Id.* at 100a.

In May 2021, the Chief Hearing Examiner issued a proposed adjudication and order. RR at 105a-25a. Kansky filed exceptions, which the parties briefed. On June 21, 2022, the Board issued the Final Order reinstating Kansky's license to "expired–on probation status" and directing, in part, as follows:

> [Kansky] may apply to reactivate his license but must sit to retake the podiatry licensing examination and, provided he successfully takes and passes the examination and submit[s] to the Board all required fees and documentation, including satisfactory proof that he has completed the requisite continuing education, current criminal record check, and proof of compliance with the Commonwealth's medical malpractice insurance requirements.
>
> Upon reactivation, [the] license shall be IMMEDIATELY placed on PROBATION for no less than TWO YEARS. During the probationary period, [Kansky] is subject to the following terms and conditions . . . .

*Id.*, Item #18 at 1. The probationary conditions included "monitoring, supervision, and investigation" by the Commonwealth's Bureau of Enforcement and Investigation (BEI) and Kansky's cooperation with those activities, as well as ongoing written notifications by Kansky to the Board's probation compliance office regarding any changes in his address, office locations, or contact information. *Id.* at 3.

7

Kansky's petition for review in this Court followed.[8]

## II. Issues

Kansky asserts two arguments on appeal. First, he contends that the Final Order is unenforceable because Section 16(a)(2) of the Podiatry Act, 63 P.S. § 42.16(a)(2), on which the Board based its adjudication, is unconstitutional and therefore void *ab initio*. Second, Kansky contends that the Final Order was based on bad faith and abuse of discretion and was not supported by substantial evidence.

In opposition to these arguments, the Board asserts that Kansky did not appeal from the Consent Order and that he cannot challenge its enforceability collaterally 13 years later. The Board further argues that it properly exercised its discretion by reviewing the entire record, that its Final Order was supported by substantial evidence, and that it did not abuse its discretion; rather, Kansky merely disagrees with the weight the Board assigned to the evidence in the exercise of its discretion.

## III. Discussion

## A. Enforceability of the Consent Order

In his ersatz constitutional argument, Kansky is essentially arguing that he was not convicted of a crime based on his plea of no contest, and therefore, Section 16(a)(2) of the Podiatry Act was not a valid basis to subject him to discipline. Kansky insists he "is not now arguing that the Consent [Order] is not a valid

---

[8] "Our scope of review of the Board's order is limited to considering whether necessary factual findings are supported by substantial evidence, whether the Board erred as a matter of law, and whether constitutional rights were violated." *Long v. Bureau of Pro. & Occupational Affs., State Bd. of Podiatry*, 112 A.3d 671, 674 n.2 (Pa. Cmwlth. 2015).

agreement between the parties[;] he is arguing that all Board disciplinary actions contained in the Consent [Order] are not enforceable, as . . . they originate from [the Board's] total reliance on 63 P.S. § 42.16(a)(2) of the Act, . . . which is unconstitutional . . . ." Kansky Br. at 10.

The Board responds that Kansky is improperly attempting to re-litigate the Consent Order and that Kansky cannot challenge the constitutionality of the Consent Order through the vehicle of a license reinstatement petition filed 13 years after the entry of the Consent Order. We agree.

As the Board correctly observes, a judgment entered by consent "binds the parties with the same force and effect as if a final decree ha[d] been rendered after a full hearing on the merits." Board Br. at 12 (first quoting *Zampetti v. Cavanaugh*, 176 A.2d 906, 909 (Pa. 1962) (additional quotation marks omitted)[9]; and then citing *Pa. Hum. Rels. Comm'n v. Ammon K. Graybill, Jr., Inc., Real Estate*, 393 A.2d 420, 422 (Pa. 1978)). Kansky did not appeal the Consent Order and thus never obtained a judicial determination overturning or invalidating the Consent Order. Further, at his reinstatement hearing before the Chief Hearing Examiner, Kansky was specifically asked whether he acknowledged ". . . the Board's authority to have taken disciplinary action based on [pleading no contest and receiving probation without verdict in the disposition of one felony charge]." RR at 41a. Kansky testified that "[a]ccording to [his] attorney, [the Board] had the authority. And so, the answer's yes." *Id.* Having acknowledged under oath at the hearing that the Board was authorized to impose discipline upon him as set forth in the Consent Order's provisions, Kansky is bound by those provisions.

---

[9] The quotation is as stated by the Board, with minor non-substantive changes from the quoted language in *Zampetti*.

Moreover, parties may waive even constitutional challenges by failing to assert them timely and properly. *In re J.M.Y.*, 218 A.3d 404, 417 (Pa. 2019) (explaining that "[e]ven constitutional challenges must be brought in a manner specified by law, and in a timely fashion, or else they are waived") (citing *Commonwealth v. Knox*, 190 A.3d 1146, 1152 n.5 (Pa. 2018) (observing that "[c]onstitutional claims are subject to waiver regardless of their importance")); *Haaf v. Zoning Hearing Bd.*, 625 A.2d 1292, 1296 (Pa. Cmwlth. 1993) (concluding that zoning applicant waived its right to pursue a challenge to the constitutional validity of a zoning ordinance when it entered into a compromise agreement with the zoning hearing board). Such a waiver precludes the party from asserting a collateral attack. *See Mitchell v. United Elevator Co.*, 434 A.2d 1243, 1247 (Pa. Super. 1981) (explaining that where a litigant fails to raise an issue on direct appeal, the doctrine of waiver precludes a collateral attack, even regarding errors of constitutional dimension) (quotation marks and additional citations omitted). Here, it is undisputed that Kansky made no attempt to appeal or otherwise assert a prompt challenge to the validity of the Consent Order. Accordingly, he waived any such challenge and may not raise it now through a collateral attack. As Kansky himself commented in his closing argument to the Chief Hearing Examiner, "if I think it's incorrect I need to exercise my right at the time. And once that's vetted and they [sic] make a ruling that's the end of it . . . . [I]t is what it is. And you can't go back . . . ." RR at 100a.

## B. The Board's Exercise of Discretion

In a related argument, Kansky asserts that the Board's decision should be reversed because it constituted bad faith and an abuse of discretion and was not supported by substantial evidence. We discern no merit in this argument.

10

Kansky alleges that the Board made numerous false or unsupported statements in its decision regarding his failure to maintain legally required logs when dispensing hydrocodone, as well as regarding his expunged conviction.[10] Kansky also argues that the Board ignored evidence that supported his position and that the Board's decision therefore was not supported by substantial evidence.

"Substantial evidence is defined as evidence that a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Rev.*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013) (additional citation omitted). "Where substantial evidence supports [an agency's] findings, they are conclusive on appeal . . . . Further, *it is irrelevant whether the record contains evidence supporting findings other than those made by the [agency]; the proper inquiry is whether the record supports the findings actually made*." *Id.* (emphasis added) (additional citation omitted).

Here, the record contained substantial factual evidence to support the Board's decision. Indeed, the evidence consisted largely of Kansky's own admissions during his hearing testimony. Kansky acknowledged having admitted in the Consent Order that he had not kept records of the hydrocodone he dispensed to patients. RR at 36a-38a. He also admitted that he had hydrocodone delivered to his house and then distributed it among his three offices. *Id.* at 38a. He further admitted to self-medicating with hydrocodone for dental pain. RR at 38a-39a. In addition, he admitted he may also have self-medicated at times for other maladies such as

_____

[10] Regarding the expunction, Kansky alleges that the Board made a "knowingly false" statement that his sentence of probation without verdict justified suspension of his podiatry license, when in fact his record regarding that sentence was subject to expunction. Kansky Br. at 20. However, as noted on page 3 above, Section 16(a)(2) of the Podiatry Act expressly allows the Board to suspend, revoke, cancel, or refuse to grant a license as a consequence of, *inter alia*, "receiving probation without verdict . . . ." 63 P.S. § 42.16(a)(2). Thus, the Board's statement was true.

injuries and headaches. *Id.* at 39a. Thus, the Board's findings were supported by substantial undisputed evidence.

To the extent that Kansky's assertions are based on legal arguments, those arguments are also without merit. First, as discussed in the previous section, Kansky has waived any challenge to the validity or enforceability of the Consent Order. As most of his factual arguments depend on refuting admissions contained in the Consent Order, those arguments are likewise waived.

Further, Kansky's legal arguments in opposition to the Board's conclusions are meritless. He is incorrect in suggesting that he was not legally required to maintain dispensary logs concerning his administration of hydrocodone to his patients. Kansky relies on Section 12(a) of the Drug Act, which provides:

> (a) Every person who sells or otherwise distributes controlled substances, shall keep records of all purchases or other receipt and sales or other distribution of such substances for two years from the date of purchase or sale. Such records shall include the name and address of the person from whom purchased or otherwise received or to whom sold or otherwise distributed, the date of purchase or receipt or sale or distribution, and the quantity involved: Provided, however, [t]hat *this subsection shall not apply to a practitioner who dispenses controlled substances to his patients, unless the practitioner is regularly engaged in charging his patients, whether separately or together with charges for other professional services, for substances so dispensed.*

35 P.S. § 780-112(a) (emphasis added). Kansky insists, without evidentiary support, that he distributed hydrocodone to his patients for free and therefore did not have to keep records under Section 12(a). However, even putting aside the lack of any record support for Kansky's self-serving claim that he did not charge patients for

12

hydrocodone he dispensed to them, his argument ignores the record-keeping requirements imposed by Section 12(b) of the Drug Act, which provides:

> (b) *Every practitioner licensed by law to administer, dispense or distribute controlled substances shall keep a record of all such substances administered, dispensed or distributed* by him, showing the amount administered, dispensed or distributed, the date, the name and address of the patient, and in the case of a veterinarian, the name and address of the owners of the animal to whom such substances are dispensed or distributed.  Such record shall be kept for two years from the date of administering, dispensing or distributing such substance and shall be open for inspection by the proper authorities.

35 P.S. § 780-112(b) (emphasis added).  Kansky was undisputedly a practitioner licensed by law to administer, dispense or distribute controlled substances.  Therefore, he was required to maintain records of all such substances he administered, dispensed, or distributed.  He admittedly did not maintain any such records.

Kansky admitted that having hydrocodone delivered to his house and then distributing it among his three offices violated applicable regulations.  RR at 55a-56a.  He also acknowledged the Board's authority to take disciplinary action against him based on his sentence of probation without a verdict on the felony charge to which he pleaded no contest.  *Id.* at 41a.  Kansky further admitted that when prescribing opioids, he was required to practice within the scope of his podiatry license and keep documentation of the prescribed medication in the patient's file.  *Id.* at 54a.  However, none of the stated purposes of his self-medication (dental pain, unspecified injuries, and headaches) were shown to be within the scope of his podiatry practice, nor did he produce documentation of his self-medication that had been maintained in any kind of file.

The undisputed facts discussed above provide substantial evidence in support of the Board's findings.  In addition, the legal authorities cited above support the Board's reasoning and conclusions.  Accordingly, we will not disturb the Board's decision.

## IV. Conclusion

Based on the foregoing analysis, we affirm the Board's Final Order.

_____
CHRISTINE FIZZANO CANNON, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lawrence J. Kansky, DPM,          :
             Petitioner        :
                                :
        v.                   :
                                :
State Board of Podiatry,         :    No. 743 C.D. 2022
             Respondent    :

O R D E R

AND NOW, this 21st day of July, 2023, the Final Order of the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs, State Board of Podiatry, dated June 21, 2022, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge