## Smith v. City of Philadelphia

*Mark R. Zecca,* for appellee.
*Robin A. Bolacker,* for appellant.

AVELLINO, *J.,* February 15, 1996—John Smith has appealed from my order affirming the Pension Board's decision to terminate his benefits, effective September

1, 1983. The salient facts are not disputed. Shortly after he retired from the police force, former Lieutenant Smith was indicted, tried, and *convicted* of numerous federal offenses, including extortion. All of his crimes were committed while he was in the City's employ. Consequently, on September 1, 1983, the Pension Board sent him a letter saying his monthly benefits were being terminated. The board explained, "[we] received an opinion from the City Solicitor's Office [that forfeiture is required by] section 217 of the pension ordinance. . . ."[1]

Mr. Smith appealed this ruling at no. 8309-5023. The appeal was commenced by "notice" and, under a former local rule, he was required to file a brief no later than 30 days after the board filed its record with the court. Judging from the docket, the record was received on October 21, 1983. Mr. Smith, however, never filed a brief. As a result, the court did not know his appeal was pending until *March 1992,* when he filed a "petition for permission to file a [late] brief." That request was denied by Judge Herron who noted, "A request to file a brief about *nine years* after the appeal period will *not* be granted."[2]

On January 14, 1993, Mr. Smith, through new counsel, filed a petition "[R]equesting [the] court to rule on [an] appeal." Not surprisingly, the City responded with a motion to quash. These matters were assigned to me in January 1994, and were promptly *settled.* The

---

1. The board is required by the Home Rule Charter to comply with the solicitor's opinions. See *e.g., Philadelphia Department of License & Inspections v. Philadelphia Board of License & Inspection Review,* 29 Phila. 130, 133-34 (1995) (collecting and discussing leading cases).

2. See appendix "A" (order dated March 16, 1992). (emphasis in original) Oddly, Judge Herron did not take the next logical step and dismiss the appeal for a lack of prosecution.

board agreed to give Mr. Smith a hearing, as required by section 553 of the Local Agency Law ("LAL"), 2 Pa.C.S. §553, and he, in turn, agreed to withdraw his appeal. See appendix "B" (order dated February 8, 1994).

At his hearing on December 4, 1994, Mr. Smith did not challenge the assertion that forfeiture was required by section 217 of the pension ordinance.[3] Instead, he argued that forfeiture, which is a harsh penalty for a person of modest means, should not be applied on a retroactive basis. In short, he wanted the board to award him benefits from September 1983, until such time as his entitlement was *validly* terminated. He reasoned that the letter of September 1, 1983, embodied an "adjudication," as defined by the LAL, but was *invalid* because it had not been *preceded* by a hearing.[4]

The board agreed it had erred, but refused to award retroactive benefits. In one breath it said Mr. Smith had not been "prejudiced" by its failure to provide a pretermination hearing, and in another that a procedural misstep, especially one induced by the City Solicitor's Office, hardly justified a draconian award in excess of $250,000 (11.3 years x $21,778.56 per year = $246,097.73 *plus* interest).

Mr. Smith appealed that ruling on legal error grounds at no. 9504-0171. Basically, he argued the board was required to pay retroactive benefits as *punishment* for

---

3. See *e.g., Horsley v. Board of Pensions & Retirement,* 519 Pa. 264, 271, 546 A.2d 1115, 1118 (1988) (retired employees are subject to section 217 provided their crimes were committed while in the City's employ).

4. Section 553 of the LAL explains: "No adjudication of a local agency shall be *valid* as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." (emphasis added)

violating his right to procedural due process. The fact that he was not entitled to such benefits, he added, was utterly immaterial. It was also immaterial that the "punishment" would be inflicted upon members of the pension plan, as opposed to members of the board. I disagreed and affirmed the board's decision.

Briefly, it was always common ground that Mr. Smith was entitled to a pretermination hearing.[5] Because the board failed to provide that hearing, the first "adjudication" was a *nullity*.[6] That said, there was little else to offer Mr. Smith. When common pleas acts as an *appellate* court, it may not provide relief beyond that authorized by the Judicial Code for appellate courts generally.[7] For example, I could not award him *dollars* for the board's failure to provide a hearing.[8] To recover damages for a civil rights violation, he needs to enter the courthouse via a "civil action" (as opposed to an appeal), and use the doorway marked "original jurisdiction" (instead of the one marked appellate jurisdiction).

True, I am authorized to transform, so to speak, misguided appeals into civil actions (and vice versa). See *e.g.,* 42 Pa.C.S. §708(b). When I mentioned this possibility to his counsel, she declined (probably because a civil rights action would be time-barred). Instead, she asked me to find a self-executing sanction for the

---

5. See *e.g.,* Lawrence H. Tribe, American Constitutional Law, §10-9 (2d ed. 1988) (collecting and discussing salient cases).

6. See *e.g., Philadelphia Board. of License & Inspection Review v. 2600 Lewis Inc.,* 661 A.2d 20 (Pa. Commw. 1995).

7. See 42 Pa.C.S. §702 (when common pleas acts as an appellate court, §§702-708 of the Judicial Code apply or are available to them).

8. *Id.* at §706 ("Disposition of Appeals"). See also, 2 Pa.C.S. §754(b) (common pleas may enter only orders authorized by section 706 of the Judicial Code).

board's blunder in the language of the Fourteenth Amendment itself. The U.S. Supreme Court, after all, had done as much when it created the exclusionary rule. Surely, she argued, Mr. Smith's right to procedural due process was as valuable as his right to be free from unreasonable searches and seizures.

I declined her invitation, in part because she had no cases, but mainly because her argument begged too many questions. To begin with, the constitution was violated when Mr. Smith was deprived of his benefits without some kind of hearing. When that happened, he could have presented his constitutional claim (and obtained a hearing) via a traditional remedy under state law,[9] a Civil Rights Act suit under federal law,[10] or a statutory appeal under the Local Agency Law.[11] He chose the latter and pursued it badly. Consequently, his hearing was 11 years late. Nevertheless, he did receive a court-ordered hearing.[12] If he needed interim

---

9. Mandamus, for example, will lie to compel an agency to conduct a hearing. For a textbook discussion, see *e.g.,* Standard Pennsylvania Practice 2d §166:271 (1992).

10. The victims of administrative wrongs can present their constitutional claims to federal courts without going first to state courts or to state administrative review tribunals. See *e.g.,* John Leubsdorf, *Constitutional Civil Procedure,* 63 Tex. L.Rev. 579, 605 (1984)

11. Pennsylvania courts and commentators use the expression, "statutory appeal," to describe a legislative grant of court access that is designed to facilitate judicial review of action taken by administrative bodies. See *e.g., Erie Human Relations Commission v. Erie Insurance Exchange,* 465 Pa. 240, 245, 348 A.2d 742, 744 (1975); Comment, *Judicial Review of Administrative Action in Pennsylvania: An Updated Look at Reviewability and Standing,* 16 Duq. L.Rev. 201, 202 (1977-78).

12. See *e.g.,* Charles H. Koch, Jr., Administrative Law and Practice §7.41 (1985) ("[When] the action is one for injunction or [judicial] review [the] court which finds a denial of due process [will] merely

relief, *post-deprivation* remedies were always available and would have enabled him to recover general (and punitive) damages including, of course, "lost" benefits.[13] Needless to say, all of the interim remedies would have required proof that the board's failure to provide a hearing, as opposed to some other factor like Mr. Smith's failure to seek a hearing, was the *proximate cause* of the losses alleged. Withal, I decided the victims of administrative wrongs were adequately protected, and hardly needed a self-executing constitutional remedy.

---

enjoin[] the action or . . . return[] the matter to the agency for decision-making in conformity to the due process requirement.").

13. An agency's failure to provide a pretermination hearing is usually actionable, for example, under section 1983) of the Civil Rights Act, 42 U.S.C. §1983. See *e.g.,* Charles H. Koch, Jr., *supra* note 12 at §7.42 (1985 & Supp.).

---

## APPENDIX A

CITY OF PHILADELPHIA LAW DEPARTMENT
BY: FRANCIS X. BIELLI, ASSISTANT CITY
SOLICITOR
ATTORNEY I.D. NO. 62791
1530 MUNICIPAL SERVICES BUILDING
PHILADELPHIA, PA 19102
(215) 686-5280

COUNSEL FOR RESPONDENT

---

COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

SEPTEMBER TERM, 1983—NO. 5023

JOHN SMITH v. CITY OF PHILADELPHIA
BOARD OF PENSIONS AND RETIREMENT

## ORDER

And now, March16, 1992, it is hereby ordered and decreed that the petition for permission to file supplemental brief is hereby denied and dismissed with prejudice.

BY THE COURT:
/s/Herron, J.

A request to file a brief almost *9 YRS* after the appeal period, will *not* be granted.

---

## APPENDIX B

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA

CIVIL DIVISION

NO. 8309-5023

SMITH versus PPB

ORDER OF COURT

And now, to wit, February 8, 1994, this appeal is withdrawn subject to the following stipulations between counsel: (a) the PPB will provide Mr. Smith with a hearing as required by the Local Agency Law. See *e.g.,* 2 Pa.C.S. 553; (b) Mr. Smith may re-appeal to common pleas, if necessary, after the PPB issues its second adjudication regarding Smith's entitlement to pension benefits.