**BOROUGH OF LEWISTOWN, Petitioner,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided Feb. 28, 1996.

Vincent Candiello, for Petitioner.

Anthony C. Busillo, II, for Respondent and Intervenor, Lewistown Police Association.

Before FRIEDMAN and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

The Borough of Lewistown (Borough) appeals from an order of the Pennsylvania Labor Relations Board (PLRB) which: (1) sustained in part and dismissed in part the Borough's exceptions to a proposed decision and order of a PLRB hearing examiner; and (2) modified the proposed decision and order to direct the Borough to comply with the relief set forth by the hearing examiner.[1] We reverse.

On June 30, 1993, the Borough, Derry Township and Bratton Township (collectively, municipalities) entered into an intermunicipal agreement for the provision of police services.[2] The agreement established the Mifflin County Regional Police Department (RPD). Pursuant to section 5.2 of the intermunicipal agreement, the municipalities delegated to the RPD specified enumerated functions, powers and responsibilities which they possessed with respect to the operation, management and administration of a municipal police department. R. at 72a–73a. Such delegated powers and responsibilities include: (1) those pursuant to what is commonly referred to as Act 600[3] concerning the establishment, regulation, benefits determination, funding and administration of a police pension plan for RPD police officers; and (2) those pursuant to what is commonly referred to as Act 111[4] concerning collective bargaining for RPD police officers. *Id.*

The intermunicipal agreement delegates to the RPD the municipalities' authority to hire,

---

1. Lewistown Police Association has filed a brief in this case as intervenor. Its position is that the PLRB's determination should be affirmed.

2. The intermunicipal agreement was entered into pursuant to what is commonly referred to as the Intergovernmental Cooperation Act, Act of July 12, 1972, P.L. 762, *as amended*, 53 P.S. §§ 481— 490. On July 20, 1993, the Borough enacted Ordinance 1993–5 which approved the intermunicipal agreement. Reproduced Record (R.) at 116a–18a.

3. Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767—778.

4. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1—217.10. Pursuant to section 1 of Act 111, policemen employed by the Commonwealth or by one of its political subdivisions have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits. 43 P.S. § 217.1.

fire and direct police officers. R. at 72a–73a. The municipalities pay the RPD's expenses, including salaries and benefits for police officers, by making one-time funding payments when they become parties to the agreement and by making periodic payments to cover the "units" of police services that they receive during the duration of the agreement. R. at 81a, 77a. The intermunicipal agreement also provides that the RPD is under the direction and control of a board of directors and that the powers delegated to the RPD are vested in the board of directors. R. at 72a.

Pursuant to section 5.5 of the intermunicipal agreement, the municipalities granted the board of directors the power to determine and fix: (1) the salaries, wages, pay and other compensation of RPD employees; (2) the benefits of RPD employees; and (3) the terms and conditions of employment for RPD employees. R. at 75a. Section 5.5 of the intermunicipal agreement further granted the board of directors the power to settle or compromise, upon such terms and conditions as the board may determine, any claims by the RPD or any claims against the RPD, its employees, its directors or its officers. R. at 76a.

The bylaws for the board of directors of the RPD state that each municipality shall have equal representation on the board of directors and that the board shall consist of two directors from each municipality if three municipalities are parties to the agreement. R. at 91a. The bylaws further provide that the directors from each municipality shall be appointed by the governing body of that municipality. *Id.* In addition, the affirmative vote of a majority of the directors present at a meeting shall be the action of the board on any matter put to a vote, provided that a quorum is present. R. at 96a. At all times relevant to the present matter, the Borough had two representatives on the board of directors of the RPD.

The RPD commenced operations on August 27, 1993. The RPD's police officers are represented for purposes of collective bargaining by the Lewistown Police Association (Association), which had represented Borough and Derry Township police officers before the formation of the RPD.[5] The collective bargaining agreements covering these police officers expired on December 31, 1993. Because the RPD and the Association were unable to agree to the terms of a new labor agreement, the matter was submitted to binding interest arbitration pursuant to Act 111. Among the issues for resolution was the matter of pension benefits for police officers employed by the RPD.

On January 10, 1994, an Act 111 interest arbitration award was issued which required, *inter alia,* consolidation of the Lewistown Police Pension Fund (Pension Fund) and the Derry Township Police Pension Fund. The award required that employee contributions be returned to employees before the pension plans were consolidated and that contributions made by either the Borough or Derry Township be distributed to the RPD. The award also required that the consolidated pension plan provide a retirement benefit to police officers of 70% of final average salary upon attainment of age 50, with 25 years of service. The RPD's board of directors voted unanimously to implement the arbitration award. No appeal was taken from the arbitration award and the appeal period has expired.

After issuance of the arbitration award, Officer Robert Rarick informed the RPD that he intended to retire in March 1994. Officer Rarick had been employed by the Borough until August 27, 1993 when he became employed by the RPD.[6] The RPD advised Officer Rarick that it could not provide him with the retirement benefits granted by the arbitration award because the Borough had refused to distribute its police pension funds to the RPD in accordance with the arbitration award.[7] As such, the

---

5. Bratton Township did not employ any police officers prior to the formation of the RPD.

6. The Borough has not independently employed any police officers since August 27, 1993.

7. The Borough emphasized that it was the trustee of the Pension Fund which had been established pursuant to Act 600 for the benefit of the Borough's police officers. R. at 54a–55a. As such, the Borough could not be compelled to terminate the Pension Fund and transfer its as-

RPD had been unable to establish a consolidated pension fund that conformed with the terms of the arbitration award.[8]

On March 9, 1994, the Association filed an unfair labor practices charge with the PLRB, alleging that the RPD and the Borough had engaged in unfair labor practices contrary to the provisions of section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA).[9] Specifically, the Association charged that the failure and refusal of the RPD and the Borough to implement the pension terms of the arbitration award and to permit Officer Rarick to retire, as requested, at the appropriate benefit rate constituted interference with employee rights and a refusal to bargain in good faith in violation of the PLRA and Act 111.

On March 24, 1994, the PLRB issued a complaint against the RPD and the Borough. On June 7, 1994, a hearing was held before a hearing examiner.

In its proposed decision and order, the hearing examiner concluded that the RPD, including the Borough, was an employer and the Association was a labor organization within the meaning of the PLRA and Act 111. As such, the PLRB had jurisdiction over this matter. The hearing examiner further concluded that the RPD and the Borough had engaged in unfair labor practices in violation of section 6(1)(a) and (e) of the PLRA and Act 111 by not complying with the interest arbitration award.

On January 3, 1995, the Borough filed with the PLRB timely exceptions to the proposed decision and order of the hearing examiner. The PLRB sustained in part and dismissed in part the Borough's exceptions.

The PLRB first stated that the municipalities, acting by and through their representatives on the RPD's board of directors, jointly exercised powers demonstrating an employer-employee relationship, namely the hiring, firing and compensating of police officers. As such, the municipalities, acting by and through the RPD, were the employers of the RPD's police officers. The PLRB further stated that it was undisputed that the employees were police officers and that the municipalities were "political subdivisions" of the Commonwealth within the meaning of Act 111.[10] As such, the PLRB concluded that the municipalities were public employers for purposes of Act 111. The PLRB opined that, because the Borough was an Act 111 employer, the hearing examiner did not err in finding that the Borough had committed an unfair labor practice by refusing to comply with the arbitration award.

Contrary to the conclusion reached by the hearing examiner, the PLRB agreed with the Borough that the RPD, in and of itself, was not a public employer for purposes of Act 111 because a regional police department is not the Commonwealth or one of its "political

---

sets to the RPD so the RPD could create a new pension plan which would not be established pursuant to Act 600. *Id.* The Borough had not been a party to the Act 111 proceeding and asserted that to compel it to transfer the Pension Fund's assets to the RPD was illegal and placed the Borough at risk. *Id.*

8. Derry Township has turned over its police pension fund to the RPD.

9. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1—211.13. Section 6(1)(a) and (e) of the PLRA provides as follows:
    (1) It shall be an unfair labor practice for an employer—
    (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
     \*    \*    \*    \*    \*    \*

    (e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.
43 P.S. § 211.6(1)(a), (e).

10. A "political subdivision" of the Commonwealth is defined for purposes of Act 111 by the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501—1991. *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board*, 508 Pa. 576, 499 A.2d 294 (1985). The Statutory Construction Act of 1972 defines a "political subdivision" as "[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district." 1 Pa.C.S. § 1991.

subdivisions." Accordingly, the PLRB vacated the hearing examiner's conclusion that the RPD was an Act 111 employer.[11]

The PLRB further opined that, because the Borough did not appeal the arbitration award, it was precluded from collaterally attacking the award in an unfair labor practices proceeding. The PLRB also noted that, by entering into the intermunicipal agreement whereby its individual authority over police officers was delegated to the RPD, the Borough waived its right to independently appeal the arbitration award since the RPD's board of directors decided not to appeal the arbitration award.

■ Based upon all of the evidence that was presented, the PLRB concluded that: (1) it had jurisdiction over the parties; (2) the municipalities, acting by and through the RPD, were public employers within the meaning of the PLRA and Act 111; (3) the Association was a labor organization within the meaning of the PLRA and Act 111; and (4) the Borough had committed unfair labor practices in violation of section 6(1)(a) and (e) of the PLRA and Act 111. The PLRB directed the Borough to cease and desist from interfering with, restraining or coercing employees in the exercise of their rights guaranteed by the PLRA and Act 111. The PLRB also directed the Borough to cease and desist from refusing to bargain collectively, in good faith, with the Association. The PLRB further directed the Borough to implement the pension provisions of the interest arbitration award and to make all affected employees whole for any and all losses. The Borough now appeals the PLRB's determination to this court.[12]

In its appeal, the Borough raises the following issues: (1) whether the PLRB erred in concluding that the Borough had committed an unfair labor practice by refusing to abide by the arbitration award; (2) whether the PLRB erred in concluding that the Borough had waived its right to challenge the arbitration award; (3) whether the PLRB erred in concluding that the Borough was a public employer or political subdivision employing police officers within the meaning of the PLRA and Act 111; (4) whether there was sufficient evidence to establish that the Borough was a public employer or political subdivision; (5) whether the PLRB erred in concluding that it had jurisdiction over the Borough; and (6) whether the PLRB's order enforcing the arbitration award against the Borough was a denial of due process.

■ The Borough asserts in this appeal that it did not commit an unfair labor practice by refusing to implement the Act 111 arbitration award. We agree.

We initially note that the Borough created the Pension Fund pursuant to Act 600. Section 742.2 of the Borough's Police Pension Plan states that the assets which comprise the Pension Fund shall be deemed to be assets which are held by the Borough *in trust* for administration, investment, management and distribution by the Borough. R. at 110a. Section 742.5 of the Borough's Police Pension Plan further states that, although the Borough may delegate to others the authority to administer, invest, manage or distribute the assets of the Pension Fund, the responsibility for the funding, solvency, administration, investment and actuarial soundness of the Pension Fund, in all its aspects, cannot be delegated. *Id.* Such responsibility shall always remain with the Borough. *Id.*

---

11. The PLRB opined that to conclude that the RPD was the employer of the police officers, where it was clearly only a vehicle through which the municipalities jointly exercised the powers that demonstrated an employer-employee relationship, was to elevate form over substance and to deny collective bargaining rights to police officers whom the General Assembly intended to be covered by Act 111. The PLRB further opined that when political subdivisions formed regionalized police departments to provide cooperative public services, the political subdivisions did not lose their identities in the process. Rather, for Act 111 purposes, the political subdivi-

sions retained their identities and discharged police services for their citizens by and through the regional police department.

12. This court's scope of review of an unfair labor practice decision of the PLRB is limited to determining whether there has been a violation of constitutional rights, whether errors of law have been committed, and whether necessary findings of fact are supported by substantial evidence. *Derry Township v. Pennsylvania Labor Relations Board*, 131 Pa.Cmwlth. 574, 571 A.2d 513 (1989).

The fact that the Borough serves as the trustee of the Pension Fund is critically important in this case. As trustee of the Pension Fund, the Borough has fiduciary responsibilities to the beneficiaries of the Pension Fund. A trustee has a duty to the beneficiaries of a trust to administer that trust. Restatement (Second) of Trusts § 169 (1959). The primary duty of the trustee is the preservation of the trust's assets and the safety of the trust's principal. *In re Flagg's Estate*, 365 Pa. 82, 73 A.2d 411 (1950); *In re Estate of Pew*, 440 Pa.Superior Ct. 195, 655 A.2d 521 (1994). Moreover, the trustee has an obligation to the trust's beneficiaries to take and keep control of the trust's property. Restatement (Second) of Trusts § 175 (1959).

When the Borough entered into the intermunicipal agreement for the provision of police services, the Borough delegated to the RPD specifically enumerated functions, powers and responsibilities with respect to the operation of a municipal police department. R. at 72a–73a. We note that the intermunicipal agreement granted the RPD the power to establish and administer a *new* police pension plan for the RPD's police officers. R. at 72a. The intermunicipal agreement also granted the RPD powers and responsibilities pursuant to Act 111. R. at 73a. However, nowhere in the intermunicipal agreement did the Borough delegate to the RPD its own fiduciary powers and responsibilities over the Borough's Pension Fund, as its trustee. As such, all powers and responsibilities with respect to the Pension Fund remained vested in the Borough.

Despite the fact that the Borough retained exclusive control over the Pension Fund as its trustee, the Borough was never included as a party in the Act 111 interest arbitration award, nor did it participate in the arbitration proceeding. Because the Borough, as trustee of the Pension Fund, was not a party to the arbitration award, the provisions of the arbitration award which relate to the Pension Fund cannot be binding on the Borough. Accordingly, we conclude that the Borough did not engage in unfair labor practices, contrary to the provisions of section 6(1)(a) and (e) of the PLRA, by refusing to implement the pension terms of the arbitration award.

The PLRB argues that the Borough should not be allowed to challenge the arbitration award because it never filed an appeal to the award when it was first issued. The PLRB relies upon *Pennsylvania Labor Relations Board v. Commonwealth*, 478 Pa. 582, 387 A.2d 475 (1978) (*PLRB*) and *Derry Township v. Pennsylvania Labor Relations Board*, 131 Pa.Cmwlth. 574, 571 A.2d 513 (1989) to support its position. We conclude that those cases are distinguishable from the present case.

In *PLRB*, our Supreme Court concluded that a party aggrieved by an arbitrator's decision could not refuse to abide by that decision by failing to appeal the decision and waiting for a subsequent enforcement proceeding to challenge the validity of the decision. 478 Pa. at 588–91, 387 A.2d at 478–79. In *PLRB*, the Commonwealth, which had entered into a collective bargaining agreement with a union and which had been a party to grievance arbitration proceedings, failed to seek judicial review of the arbitrator's award with which it disagreed. Our Supreme Court stated that to allow one party to bypass an opportunity to appeal an award via an established appellate route while retaining the ability to collaterally challenge the validity of that award in a subsequent enforcement proceeding did not square with notions of judicial economy. *Id.* at 590, 387 A.2d at 479.

Similarly, in *Derry Township*, a township sought review of a PLRB order which concluded that the township had committed an unfair labor practice by refusing to comply with a portion of an interest arbitration award issued pursuant to Act 111. Relying upon our Supreme Court's decision in *PLRB*, this court stated that the township, which had been a party to the arbitration proceedings, had failed to follow the appeal procedures mandated by our Supreme Court in *PLRB*. *Derry Township*, 571 A.2d at 515. Because the township never appealed the arbitration award, this court stated that the township could not assert, in an unfair labor practice proceeding, that the award was not valid.

In the present case, the position of the Borough is not the same as the Common-

wealth's position in *PLRB* or the township's position in *Derry Township*. Here, the Borough was never a party to the arbitration award, despite the fact that the Borough retained exclusive control over the Borough's Pension Fund, as its trustee. Accordingly, *PLRB* and *Derry Township* are not controlling in this matter.

In addition, the Borough had delegated to the RPD powers and responsibilities pursuant to Act 111, except for the Borough's own fiduciary responsibilities concerning the Pension Fund. As such, the Borough could not independently challenge the arbitration award. *See Lee v. Municipality of Bethel Park*, 156 Pa.Cmwlth. 158, 626 A.2d 1260 (1993). We emphasize that while the Borough had delegated to the RPD powers and responsibilities pursuant to Act 111, this delegation did not invalidate or nullify the Borough's separate powers and responsibilities as trustee for the Pension Fund.

We conclude that because the Borough was not a party to the arbitration award, the provisions of the arbitration award relating to the Borough's Pension Fund cannot be binding on the Borough.

Accordingly, the order of the PLRB is reversed.[13]

### *ORDER*

NOW, this 28th day of February, 1996, the order of the Pennsylvania Labor Relations Board, dated May 30, 1995, at No. PF–C–94–38–E, is reversed.

---

**13.** Given our disposition of this case, we need not address the other issues raised by the Borough in its appeal before this court.