**CITY OF PHILADELPHIA, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 17, 2000.
Decided July 24, 2000.
Reargument Denied Oct. 4, 2000.

Richard Feder, Philadelphia, for petitioner.

Keith A. Herbster, Harrisburg, for respondent.

Thomas W. Jennings, Philadelphia, for intervenor, F.O.P. Lodge No. 5.

Before: SMITH, Judge, PELLEGRINI, Judge, RODGERS, Senior Judge.

RODGERS, Senior Judge.

The City of Philadelphia (City) petitions for review of the Sept. 22, 1999, final order and decision of the Pennsylvania Labor Relations Board (Board) that sustained in part and dismissed in part the City's exceptions to the proposed decision and order (PDO) of the Board's Hearing Exam-

iner. The Hearing Examiner determined that the City failed to comply with the Arbitration Award arising from a grievance filed against the City by the Fraternal Order of Police, Lodge No. 5 (Union), and committed unfair labor practices in violation of Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA),[1] as well as the act commonly known as Act 111.[2] We affirm in part and reverse in part.

On April 27, 1996, the City discharged three police officers (Lester Johnson, John O'Hanlon and Edward Greene) for alleged misconduct in the course of the officers' February 1994 raid of an illegal cockfight. Federal authorities indicted the officers on charges arising from that raid, but a federal jury acquitted all three officers on all counts. Despite their acquittal, the City refused to reinstate these officers and the Union filed a grievance for their reinstatement. The grievance resulted in the Arbitration Award (Award) in the Union's favor on January 14, 1998.[3] In the Award the Arbitrator provided the following relief:

> The City is hereby ordered to reinstate the grievants ... to their former positions and to make them whole for all back pay, benefits and seniority they would have earned but for their discharges, less any interim substitute earnings.

Arbitration Award at 43.

The City appealed the Award to the Philadelphia County Court of Common Pleas, which affirmed. On July 3, 1998, the City reinstated the three officers and assigned them to the differential police

1. Act of June 1, 1937, P.L. 468, *as amended,* 43 P.S. §§ 211.6(a) and (e).

2. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

3. The City argued before the Arbitrator that the initial discharge of the three officers was based, not only on their indictments and arrests, but was also for just cause because the City claimed the three conspired to raid the

cockfight, steal money and cover-up that theft. The City claimed the discharge was consistent with those of other officers who were found not guilty of crimes but who were, nevertheless, discharged because their behavior violated police department regulations. The Arbitrator rejected these arguments and found the City failed to prove just cause because the City failed to show, with credible evidence, that the officers engaged in the charged misconduct.

response (DPR) unit. The DPR unit exclusively receives citizen phone calls that do not require police action and offers no opportunity for overtime. With the exception of these three officers, all other DPR unit officers are assigned to the unit for reasons, such as pregnancy or injury, that requires them to be temporarily off the street. In contrast to all other officers in the City's police department, including those assigned to the DPR unit, the City failed to issue these three officers badges, weapons or identification cards. Before this case, no officer reinstated by way of an arbitration award had been placed in the DPR unit and all such reinstated officers were issued badges, weapons and identification, regardless of the circumstances of their initial discharge.

Before their discharge, each of the three officers received substantial overtime earnings in 1994 and 1995. When reimbursing the back pay ordered in the Award, the City did not include any amount for overtime pay. Also, though O'Hanlon passed the written test for promotion to sergeant before he was discharged and was scheduled to take the oral test in May 1996, the City did not credit him for passing the written portion of the test.

On July 29, 1998, the Union filed its charge of unfair labor practices with the Board. After two days of hearings, the Board's Hearing Examiner issued the PDO on May 11, 1999, in which the Examiner sustained the Union's charges. The PDO ordered the City to: 1) immediately transfer the officers to assignments where they perform traditional police duties and to immediately issue them badges, weapons and proper identification, 2) to recalculate their back pay to include credit for overtime, and 3) to give O'Hanlon credit

for passing the written sergeant's test and to schedule him to take the next-administered oral test. If O'Hanlon were to score the same or higher as the lowest scoring candidate promoted as a result of the May 1996 oral test, the Hearing Examiner ordered O'Hanlon be retroactively promoted to sergeant.

The City filed exceptions to the PDO with the Board. The Board sustained the City's exception to the retroactive promotion of O'Hanlon, but not the City's exception crediting him for passing the written test.[4] The Board dismissed the City's other exceptions and, on September 22, 1999, made the PDO absolute and final as amended. The City petitions this Court for review.[5]

When an unfair labor practice charge alleges a party's refusal to comply with a grievance arbitration award, the Board must first determine whether an arbitration award exists, then, whether the appeal process has been exhausted, and, if so, whether the employer failed to comply with the award. *Pennsylvania Labor Relations Board v. Commonwealth,* 478 Pa. 582, 387 A.2d 475 (1978). The Board is not permitted to review the merits of the award and it is the party alleging noncompliance with a grievance arbitration award that has the burden of proof to show that the opposing party has failed to comply with the arbitrator's decision. *Id.* Furthermore, in evaluating whether the City complied with the Arbitration Award, the Board can not transcend the Award or reevaluate the City's case against these officers. *Id.* After the exhaustion of the appeal process, an arbitration award may not be collaterally challenged in an unfair labor practice enforcement proceeding.

4. The Board also made minor corrections to certain dates in the PDO.

5. This Court's scope of review of a final order of the Board where the Board finds an unfair labor practice based on an employer's failure to comply with a grievance arbitration award is to uphold the Board's order provided the Board's interpretation of the award is sup-

ported by the record, does not violate constitutional rights, and is not contrary to law. *Wage and Policy Committee of Wilkins Township Police Department v. Pennsylvania Labor Relations Board,* 707 A.2d 1202 (Pa.Cmwlth. 1998); Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

*Id.; Derry Township v. Pennsylvania Labor Relations Board,* 131 Pa.Cmwlth. 574, 571 A.2d 513 (1989).

Here, there is no dispute that an award exists or that the City has exhausted its appeals. This dispute involves the three above-enumerated areas of the PDO. The City asserts the Board erred in its conclusions that the City failed to comply with the Award in those three areas.

First, the City argues that the Board erred in finding the City failed to comply with the Arbitration Award when it reinstated the three officers to the DPR unit and did not issue them weapons, badges, and proper identification. Though the Board acknowledges, as did the Arbitrator and the Hearing Examiner, that the officers have no right to be reinstated to their specific former assignments, the City claims that the record supports a distinction between "position" and "assignment," and argues the Board failed to take into account that distinction.[6] The City charges there is nothing in the Award that limits the City's right to assign the reinstated officers or any requirement that they be placed in positions involving traditional police duties. The City concludes the Board had no evidentiary basis for its finding that the Award prohibited the officers' assignment to the DPR unit and, consequently, no evidence of noncompliance by the City with this part of the Award. We disagree.

■ The City's distinction between positions and assignments ignores record evidence and promotes form over substance. These officers, unlike any others reinstat-

ed by an arbitration award, have been placed in the DPR unit and taken out of the normal police officer employment track that includes the opportunities enjoyed by other officers for career advancement and promotion.[7] The Award does not authorize the City to place these three officers in the DPR unit indefinitely where they will have no opportunity for overtime or to make arrests, and no opportunity to gain further training or experience. Though the Award does not require the officers be assigned to the exact assignments they held before their discharge, the Arbitrator's make-whole order does require these officers have the same opportunities as other police officers. *Uniontown Area School District v. Pennsylvania Labor Relations Board,* 557 Pa. 180, 732 A.2d 607 (1999) (an employee's prospects for advancement or promotion is an interest protected by the Public Employe Relations Act[8]).

The City next claims the same flaws are present in the Board's order to compel the City issue the three officers weapons, badges and identification numbers. The City stresses the Board ignored serious law enforcement concerns and the unique circumstances here.[9] Furthermore, the City argues the determination of the issuance of weapons or the authority to make arrests belongs solely to the police department under the Philadelphia Home Rule Charter (Charter).[10] 351 Pa.Code §§ 3.3-101, 5.5-200(b).

We conclude that the Board is correct in its observation that the only unique circumstance here is that the City has not

---

6. The City contends all three officers have positions as police officers, while their former jobs in the Highway Patrol (Johnson, O'Hanlon) or in the Twenty-fifth Police District (Greene) are assignments.

7. The Hearing Officer's PDO listed four cases where an arbitrator ordered the officer reinstated after being cleared of criminal charges and observed that none of the four had been placed in the DPR unit and denied issuance of a badge, weapon and other required identification. PDO at 5.

8. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

9. One of those concerns was that impeachment material generated during the officers' federal trial would have to be disclosed in any future criminal trial in which these officers might appear.

10. Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §§ 13101–15176.

accepted that these officers were not convicted. While the Board did not dispute the police department's authority under the Charter, it correctly determined that that authority does not exempt the City from complying with the Act 111 grievance Arbitration Award or the parties' collective bargaining agreement. Here, the City's position emasculates these officers' protection under Act 111 and the PLRA by allowing the City to re-litigate the merits of the Arbitration proceeding in an impermissible collateral attack on the Arbitration Award. *Pennsylvania Labor Relations Board v. Commonwealth,* 478 Pa. 582, 387 A.2d 475 (1978).

■ Allowing such an attack here could permit the City to prevail in this enforcement proceeding despite the rejection of its arguments in federal criminal court, in arbitration, and in the appeal of the Award to the Board. The Board did not err in concluding that the assignment of these officers to the DPR unit without the issuance of weapons, badges and proper identification denied them reinstatement to their former positions as police officers and was not in compliance with the Arbitration Award.

■ Next, the City claims the Board erred in finding the City failed to comply with the Arbitration Award when it failed to calculate the overtime they would have earned but for their discharge. The City correctly observes that the award did not specifically state that overtime was to be paid. As reviewed below, record testimony demonstrates the City's long-standing practice was to include overtime as a remedy only if an award specifically ordered it. The record also reveals the three officers knew of this policy. Here, the Award reinstatement order specifically listed only back pay, benefits, and seniority. The City notes that its back pay award did include stress, clothing, and holiday pay, as well as the sick and vacation time the officers would have earned while they were out.

The City's director of labor relations testified that overtime earnings depend on where one is assigned, that there is no right to any guaranteed amount of overtime, and that one gets overtime only if one works more than forty hours per week. Even the Union official in charge of preparing all contractual grievances acknowledged that the City did not include overtime when computing the officers' back pay. The police department's fiscal officer also testified that, when calculating a make whole award, the City includes the forty hour a week pay and deducts from that any interim pay, including any interim overtime, the officer earned from another source before reinstatement. The focus of the fiscal officer's testimony was that the City exactly followed the language of an award.

For these officers, this witness testified that he did not calculate any overtime because the Award did not mention overtime. He also testified that he applied the same process that he always applied in all the other similar cases because this Award's wording was the wording of most of those awards and that this policy is what the City has always used. However, when asked to name a specific award that had the particular wording of this Award, the fiscal officer testified that he could not name anything 'off-hand.'

The Board counters with the fact that the Hearing Examiner found the City's fiscal officer's testimony that overtime is never included in back pay awards, unless specifically enumerated, was conclusory and not based on record evidence. As noted, the fiscal officer was unable to name such a case when an award directed make-whole relief.

We do not quarrel with the Board's policy of not disturbing the findings of its hearing examiners absent compelling circumstances and its admonition that this Court must not do so either unless an agency's determinations are not based on substantial evidence. *Harbaugh v. Pennsylvania Labor Relations Board,* 107 Pa.

Cmwlth. 406, 528 A.2d 1024 (1987). However, our review of the record demonstrates that the Hearing Examiner's rejection of the fiscal officer's statements regarding overtime does not reflect the substantial record evidence. The overtime, if any, that these officers might have earned is unknown and purely speculative.

As the above discussion demonstrates, these three officers, returning after a permanent separation, were not likely to go back to their specific former assignments. The Hearing Examiner reached the same conclusion in the PDO with the observation that the City is not required to give these officers the exact assignments they had before their discharge. As stated, the fiscal officer confirmed that he had no idea what overtime these officers may have earned.

Though we have affirmed the Board's ruling on the City's first exception and determined the Award requires these officers be assigned to jobs with traditional police duties and with the same opportunities for promotion and training, the record is clear that they will not likely be returned to their former assignments. Thus, it is only speculative as to how much overtime each officer may have generated from a non-DRP unit assignment during their two and a half-year separation period. The record shows that overtime earnings for police officers fluctuate from year to year and depend upon where an officer is assigned. Given that these officers did not have a right to any given assignment and, upon reinstatement, may yet be transferred, what overtime grievants may have earned in any hypothetical assignment is extremely speculative. Consequently, the Board's order to award these officers overtime is reversed.

Finally, the City contends the Board erred by ordering it to give O'Hanlon credit for the written portion of the next promotional exam administered. The City notes the Board properly vacated the portion of the Hearing Examiner's PDO that required O'Hanlon be promoted if he scored high enough on the oral examination. The Board determined that that part of the PDO had the effect of extending a civil service eligibility list beyond the maximum two years, *Gaffney v. City of Philadelphia*, 728 A.2d 1049 (Pa.Cmwlth.1999). The City argues the Board's modification of the PDO, which gives O'Hanlon credit for the next written exam, suffers from the same flaw. We agree.

The City also asserts the Board's final order violates the Charter. Section 7–300 of the Charter provides that all appointments and promotions to positions in civil service shall be made in accordance with the civil service regulations. 351 Pa.Code § 7.7–300. The practical effect of the modified order is to place O'Hanlon in a better position than police officers who placed on the 1996—1998 eligibility list, but were not promoted. Those officers will be required to take the current written and oral exam in order to be placed on the eligibility list, while it is sheer speculation that O'Hanlon would again pass the written part of that next-administered examination.

To give O'Hanlon credit for so passing that next-administered test violates the Charter's mandate to give open, competitive examinations in order to evaluate the relative fitness of candidates for a respective position. 351 Pa.Code § 7.7401(c). We agree that giving O'Hanlon credit for the results of his 1996 written test undermines the fundamental purpose of the civil service system to hire and promote on the basis of competitively determined merit, measured skills, and knowledge.

Accordingly, the Board's final order is affirmed in part and reversed in part consistent with this opinion.

### ORDER

NOW, July 24, 2000, the order of the Pennsylvania Labor Relations Board dated September 22, 1999, in Case No. PF–C–98–132–E, is affirmed insofar as it rein-

stated the police officers to positions involving traditional police duties and issued the officers weapons, badges, and proper identification. The order is reversed insofar as it directed the officers' back-pay awards include overtime and where it directed officer O'Hanlon be given credit for passing the written portion of the 1996 sergeants' exam.

SMITH, J., files a dissenting and concurring opinion.

SMITH, J., dissenting and concurring.

I respectfully dissent from the majority's decision to affirm the order of the Pennsylvania Labor Relations Board (Board) insofar as it prohibits the City of Philadelphia (City) from assigning Police Officers Edward Greene, Lester Johnson and John O'Hanlon to the Police Department's Differential Police Response (DPR) Unit and requires the City to issue weapons, badges and proper identification to the officers. I dissent because the record demonstrates that the City fully complied with the arbitrator's award by reinstating the officers to their former positions and by restoring their back pay and accrued sick and vacation time. I join the majority, however, insofar as it reverses the Board's order directing that the officers' back pay include overtime and that Officer O'Hanlon be given credit for passing the written component of the 1996 sergeant's examination.

Where a party seeks enforcement of an arbitrator's award by filing an unfair labor charge, the Board is authorized only to require compliance with the arbitrator's award. *Scranton School District v. Scranton Federation of Teachers,* 43 Pa.Cmwlth. 102, 402 A.2d 1091 (1979). The parties may not use an unfair labor practice proceeding to re-litigate the arbitration award. *Derry Township v. Pennsylvania Labor Relations Board,* 131 Pa.Cmwlth. 574, 571 A.2d 513 (1989). In this case the arbitration award provides only the following relief:

> The City is hereby ordered to reinstate the grievants, Edward Greene, Lester Johnson and John O'Hanlon to their former positions and to make them whole for all back pay, benefits and seniority they would have earned but for their discharges, less any interim substitute earnings.

The unrefuted employment documents entered into the record indicate that the City reinstated the officers to police officer positions in the Police Department, reimbursed the officers for their back pay and restored sick and vacation time the officers would have earned absent their discharge. Thus the City has complied with the terms of the arbitration award.

The Board correctly found that the officers have no right to their previous assignments and that the Police Commissioner is vested with the authority to train, equip, maintain, supervise and discipline the Philadelphia Police. Board's decision at pp. 3, 6; *see also* 351 Pa.Code § 5.5–200(b). Nevertheless, the Board and the majority conclude that the City failed to comply with the arbitration award because it assigned the officers to the DPR unit and refused to issue them badges, guns and identification. However, the award contains no mention of what assignments the officers are to be given upon reinstatement to their jobs and contains no mention of any entitlement to badges, guns or identification. Furthermore, the arbitrator could not have addressed these personnel matters because the sole issue before the arbitrator was whether the City had just cause to terminate the officers' employment.

The majority appears to conclude that assignment to the DPR unit is not a valid police assignment. However, the evidence of record contradicts that conclusion. The mere fact that officers are engaged in deskwork and administrative tasks without performing the full range of police duties does not mean that they are not functioning as police; rather officers are engaged in police work if they are performing duties regularly assigned to police officers.

*See Palmeri v. Commonwealth,* 508 Pa. 544, 499 A.2d 278 (1985) (holding that a state trooper's disability is of a temporary nature if the officers' recovery will enable performance of duties regularly assigned to state police even though the job may be totally sedentary); *Brandt v. Pennsylvania State Police,* 159 Pa.Cmwlth. 66, 632 A.2d 986 (1993) (same). The record shows that all members of the DPR unit are police officers and that DPR duties are assigned to police officers on a regular basis. Accordingly, the record provides no support for the conclusion that the DPR unit is not a valid assignment for police officers.

The majority also concludes that police officers cannot be reinstated without being issued badges, guns and identification. The determination of how to equip the Philadelphia Police indisputably belongs in the discretion of the Police Commissioner. The Police Commissioner has determined that the officers' duties in the DPR unit do not require them to be issued badges, guns and identification, and that determination may not be challenged in these proceedings. The City's decision to assign the officers to the DPR unit and to withhold their guns, badges or identification was based on valid law enforcement concerns, and the arbitrator's finding that the City lacked just cause to discharge the officers does not vitiate the City's valid law enforcement concerns.

The record reflects that the City received letters from the Philadelphia District Attorney and the United States Attorney for the Eastern District of Pennsylvania notifying the Police Commissioner that they would decline to prosecute any cases in which the officers were involved. The United States Attorney noted that despite the acquittals of Officers O'Hanlon and Johnson on the underlying criminal charges, they gave tape-recorded admissions pertaining to their involvement in the illegal cockfight incident, and another police officer later acknowledged that he and all three officers involved here did steal cash seized from cockfight participants. The prosecutors explained that if any of the officers appeared as a material witness in a criminal case, then the prosecution would be required to disclose impeachment evidence against the officer. The subsequent attacks on the officer's credibility would make it difficult to obtain convictions. Accordingly, the City took appropriate measures to prevent the officers from being involved in future arrests. I would therefore reverse the order of the Pennsylvania Labor Relations Board on all of the issues before the Court.